# Alexander *v.* Queen, Appellant.

*Attorney and client—Privileged communications—Evidence—
Witnesses—Competency—Trusts and trustees.*

1. All professional communications between attorney and client
are sacred.   If any particular case form an exception, it must be
shown by him who would withdraw the seal of secrecy and should
be clearly shown.

2. The one question in all cases of alleged confidential communi-
cations between attorney and client is, was the employment of the
attorney so connected with the latter's professional character as to
afford the presumption that this formed the ground of the confi-
dence reposed.   If it did, such communications are protected
against disclosure.

3. In a proceeding in equity to declare a trust, it was error to
permit an attorney who had been consulted by the defendant in
the proceeding, relative to the execution and the terms of the
trust, to testify that the defendant had agreed to hold the property
sought to be impressed with the trust in trust for the plaintiff.
Such testimony offends against the rule as to privileged communi-
cations between attorney and client, and it is immaterial that the
attorney and the defendant were mutual friends of the plaintiff
and that the attorney considered that he was rendering the service
gratuitously, it appearing that he was consulted professionally
and acted or advised as counsel.

4. In a proceeding in equity to declare a trust as to certain prop-
erty, where the answer is responsive to the bill and denies that the
alleged agreement to declare a trust had been entered into, where
the only evidence produced to corroborate the plaintiff's state-
ment that the agreement had been made was the testimony of an

attorney consulted by the defendant as to the communications made to him by the defendant, the trial court erred in granting the relief prayed for and the bill was dismissed by the Supreme Court.

Argued Feb. 7, 1916. Appeal, No. 210, Jan. T., 1915, by defendant, from decree of C. P. Delaware Co., Dec. T., 1913, No. 218, on bill in equity to declare a trust, in case of William C. Alexander, Jr., v. Sylvanus R. Queen, John W. Queen, Administrator of Sylvanus R. Queen, Substituted Defendant. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Reversed.

Bill in equity to declare a trust. Before JOHNSON, P. J., and BROOMALL, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded the relief prayed for. John W. Queen, administrator of Sylvanus R. Queen, deceased, substituted defendant, appealed.

*Errors assigned,* among others, were rulings on evidence.

*Charles L. McKeehan* and *William I. Schaffer,* for appellant.—The communications of Walter L. Sheppard, Esq., and Sylvanus R. Queen were clearly privileged, and the court erred in admitting Mr. Sheppard's testimony: Moore v. Bray, 10 Pa. 519; Surface v. Bentz, 228 Pa. 610.

*William W. Porter,* with him *George T. Butler,* for appellee.—The testimony of Walter L. Sheppard, as to declarations of Sylvanus R. Queen, corroborative of the testimony of the plaintiff, was wholly outside the realm of privileged communications: Matthews' Est., 1 Philadelphia 292; Goodwin Gas Stove & Meter Co.'s App., 117 Pa. 514; Fogg's Est., 249 Pa. 63; Leitch v. Diamond Nat. Bk. of Pittsburgh, 234 Pa. 557; Mitchell v. Mitchell, 212 Pa. 62; Brown v. Moosic Mountain Coal Co., 211 Pa.

579; Seip's Est., Probst's App., 163 Pa. 423; Swayne v. Swayne, 19 Pa. Superior Ct. 160; McMichan's Est., 220 Pa. 187.

OPINION BY MR. JUSTICE STEWART, March 27, 1916:

Sara E. R. Queen died in Media in this State, 13th August, 1912, leaving to survive her a husband, Rev. Sylvanus R. Queen, but no children or issue of deceased children. Her own and her husband's domicil had long been in Alexandria Township, Hunterdon County, in the State of New Jersey, and notwithstanding that together they had resided for much of the time for several years before her death in Media, her husband retained his citizenship in the State of New Jersey. She left two testamentary writings, one dated 29th June, 1910, by which she gave to her husband all her real estate, personal property and mixed during the natural life, and $10,-000.00 absolutely, making no disposition as to the remainder. Her signature to this paper was attested by two subscribing witnesses. She was seized of no real estate, but left a personal estate amounting to about $35,000.00. The other writing bore date 5th June, 1911, and in that she refers to herself as being of Media, Delaware County, Pennsylvania. In the first clause of this later will, she gives to her husband all her property, real, personal and mixed, during his natural life, and directs that no inventory be taken. In subsequent clauses she makes certain charitable bequests upon the death of her husband, amounting in all to $16,000.00 and directs that the remainder go to her nephew, here the appellee, when he is forty years old; in the meantime, he to be paid the interest every three months. Her signature to this paper was unattested, and because of this fact it was not provable as a last will in the State of New Jersey where the husband claimed he was domiciled, though temporarily residing in Media. The husband offered the earlier will of 29th June, 1910, for probate in New Jersey, and probate being refused for the reason that the execution of

the will had not been sufficiently established by proof, he thereupon applied for letters of administration upon her estate, and these were granted to him 17th September, 1912. Some fifteen months thereafter, 10th January, 1914, the present bill was filed in the Common Pleas Court of Delaware County in this State, by William C. Alexander, Jr., the nephew to whom was given under the later testamentary writing the remainder estate upon the death of the husband, in which, he alleged, that in order to secure the complainant's consent to the suppression of the earlier testamentary paper, and the grant of letters of administration on the estate of said Sarah E. R. Queen, deceased, in the courts and under the laws of the State of New Jersey, the defendant, the husband of the said deceased, promised and agreed that if complainant would not object to the administration on decedent's estate in the State of New Jersey and would not contest the jurisdiction of the courts of that state, he, the defendant would promptly carry out the last testamentary wishes of the decedent as expressed by her to him, which he stated to be as follows, to wit: that defendant should receive $10,000.00 of the principal of the estate for himself absolutely; and that he should hold the remainder of the principal of the estate in trust, to pay the income to himself during his life and pay the principal upon his death to the complainant; that upon the faith of the promise of defendant that he would deal with the property as trustee for complainant as the beneficiary in remainder in accordance with his agreement, complainant made no objections to the grant of letters of administration to the defendant; that the defendant wholly failed to carry out said promises and obligations of trust, and has refused to perform the trusts imposed on him, or do anything whatever in evidence, in performance, or in pursuance thereof. The bill was filed against the husband, praying that a decree be entered declaring that he hold the personal property of said decedent, less the $10,000 given him absolutely, for his life only and subject to such

life estate for the use and benefit of the plaintiff; and a further decree requiring defendant to execute to the plaintiff a declaration setting forth the said trust in such form that the declaration of trust may be duly recorded. The defendant died during the pendency of the suit, and the administrator of his estate was duly substituted. The answer filed by the husband was entirely responsive; it distinctly and explicitly denied that he had ever promised or agreed with the plaintiff that in case the latter would consent to the grant of letters of administration, he, the defendant, would carry out the testamentary wishes of the decedent as stated in the bill, and every other material averment in the bill. The case was made to turn on the one question of fact, did the defendant in consideration of the complainant acquiescing in the grant of letters of administration to him in New Jersey, and the abandonment or suppression by complainant of the later will of 5th June, 1910, promise and agree that, observing the wishes of his deceased wife as there expressed, he would hold the remainder of the estate, after receiving thereof $10,000.00 absolutely to himself and the income during life, in trust for the complainant? A very large amount of testimony was taken bearing on the question. In the view we take of the case as it appears by the findings and conclusions of the learned chancellor, but little of it calls for specific reference here. The conclusion reached by the chancellor after a very careful review of the evidence is expressed in the concluding sentence of the opinion filed in the case. It reads as follows: "The logic of the case requires that we shall rely on the testimony of Mr. Sheppard as entitled to full belief, and harmonize the declarations of the plaintiff therewith in accordance with the suggestions heretofore made on the one hand, or on the other hand reject the testimony of Mr. Sheppard altogether as unworthy of belief. This we cannot do, and it is our opinion that the agreement set forth in the plaintiff's bill was made." The full significance of this can be understood only as it

is read in connection with what is said by the chancellor
in an earlier part of the opinion where, after reviewing
all the testimony except that of Mr. Sheppard, he says,
"Were we to stop here, we think the plaintiff would
fail." In the conclusion expressed in this latter excerpt,
we entirely agree, for the reason that eliminating the
testimony of Mr. Sheppard it would simply be a case of
oath against oath, and the denial contained in the answer
would prevail. It follows that if Mr. Sheppard's testi-
mony was improperly admitted against the objection
made at the time, then upon the unmistakable findings
of the chancellor, the case would not have been made out
and the bill should have been dismissed. The objection
urged to the testimony of the witness was that the pro-
fessional relation of counsel and client existed between
Mr. Sheppard and Mr. Queen, and that what was said by
the latter to the former touching the business matter sub-
mitted by the latter was a privileged communication.
The learned chancellor thus states his reasons for over-
ruling the objection urged to the competency of the wit-
ness. "It will be remembered that according to the plain-
tiff the preparation of a declaration of trust in execution
of the agreement was a subject of consideration between
him and his uncle, and his uncle desired him to draw a
declaration of trust which he declined to do and referred
him to other attorneys and among them to Walter L.
Sheppard, a member of the law firm with which the plain-
tiff was a salaried assistant, and with whom the defend-
ant had some acquaintance. Mr. Sheppard was called
by the plaintiff as a witness to testify to the declarations
of the defendant made in connection with the drawing
of this declaration of trust. Objection was made to the
admission of this evidence, because these declarations
were confidential and privileged. Upon the trial this
evidence was admitted. Mr. Sheppard testified, 'Mr.
Queen came to me as a mutual friend of Mr. Alexander.
I occupied no professional relation whatever in the mat-
ter.' The only way in which Mr. Sheppard acted was to

prepare a declaration of trust in execution of a contract alleged to have been already made. The privilege does not extend to cases 'where an attorney is merely employed to draw up the necessary papers to a contract already agreed upon by the party, no legal advice being required.' Wharton's Law of Evidence, Vol. I, 3d Ed., Sec. 587. It does not extend to an attorney acting as a mutual friend: Beeson v. Beeson, 9 Pa. 279, 301." It will at once be observed that the learned chancellor here assumes the existence of the one essential fact that remained to be proved, namely, the contract set out in plaintiff's bill whereby in consideration of the plaintiff's acquiescence in the grant of letters of administration to the defendant, the latter had promised and agreed he would secure to the plaintiff a certain interest in the decedent's estate. He here assumes that it was an executed agreement, while immediately before in his opinion he expressly holds that aside from the testimony of this witness the evidence adduced by the plaintiff was insufficient to establish the latter's claim. If such reasoning were to prevail, it would put an end to all privileged communications. The one question in all such cases is, was the employment of the counsel so connected with the latter's professional character as to afford the presumption that this formed the ground of the confidence reposed. If it did, then those communications are protected against disclosure. That Mr. Sheppard was employed by the defendant because of the fact that he was a regular practicing attorney at law, supposed to be skilled in his profession, admits of no question. Were there nothing else in the case the character of the business committed to him would sufficiently attest this,—the preparation of a deed of trust, which by its provisions was to operate as a divestiture of ownership in property over which the defendant's control was absolute, and which in its nature would be irrevocable. Certainly had this been a testamentary act, the communcations made by the client to the attorney in connection with the making of

the will, would have been privileged during the lifetime of the party making the communication. With even greater reason we think, the communications made to an attorney by one employing the attorney to prepare a deed of trust such as was here contemplated, but which was never executed, are to be held sacred from disclosure. Whatever knowledge Mr. Sheppard possessed with respect to the matter here in dispute, he obtained from and during his professional intercourse with the defendant. It matters not that he and the defendant were mutual friends of the other party in interest, and that he considered that he was rendering the service gratuitously. It is not what he thought, but what his client thought that is important. So far as appears from the evidence, the relation between the defendant and the witness, and the terms on which the service was rendered by the latter, were no different than would have existed between the defendant and any one of the several other attorneys whose names had been suggested by the plaintiff to the defendant, had one of these been selected. In Beltzhoover v. Blackstock, 3 Watts 20, Mr. Justice SERGEANT, in an opinion sustaining the rejection of testimony of like import, says (p. 27) : "As to the other point, the refusal to compel Mr. MacDonald to answer the question proposed to him by the defendant, it seems that he possessed no knowledge on the subject, except what he obtained from his professional intercourse with the parties. This is the privilege of the client he should not be permitted to divulge. Without such a privilege the confidence between client and advocate, so essential to the administration of justice would be at an end. It is not necessary there should be a cause depending in court; it is sufficient if the witness were consulted professionally, and acted or advised as counsel. No knowledge appears to have been required by him from being called as a witness to any transactions, or acting collaterally in a distinct concern; nor was he asked for information derived aliunde. The fact alleged by the defendant ought therefore to have

been established by other testimony. There was no error in overruling this evidence." Perhaps in none of our cases is the sanctity of professional communications more vigorously asserted and maintained than in Moore v. Bray, 10 Pa. 519. Mr. Justice BELL in the course of his opinion in that case says, "It seems however to have been thought that, because the facts disclosed in reference to consideration of the assignment of the mortgage, were unessential to the conduct of the suit, and the communication regarded by the counsel in the light of casual conversations, they are not entitled to protection. But this is a mistake. It is true the rule does not embrace the disclosure of collateral facts, made during accidental conversation, held irrespective of the professional character of the recipient. But the circle of protection is not so narrow as to exclude communications, a professional person may deem unimportant to the controversy, or the briefest and lightest talk the client may choose to indulge with his legal adviser, provided he regards him as such at the moment. To found a distinction on such a ground, would be to measure the safety of the confiding party by the extent of his intelligence and knowledge, and to expose to betrayal these very anxieties which prompt those in difficulty to seek the ear of him in whom they trust, in season and out of season. The general rule is, that all professional communications are sacred. If the particular case form an exception, it must be shown by him who would withdraw the seal of secrecy, and, I think, should be clearly shown."

We are of one mind in holding that it was error to admit the testimony of Mr. Sheppard. Without his testimony the learned chancellor held that the case of the plaintiff was incomplete. With this conclusion we agree. It follows that the testimony on which plaintiff's case rested being incompetent and inadmissible, the plaintiff's bill should have been dismissed. The decree is accordingly reversed, and the bill is dismissed.