**SPRAY PRODUCTS CORPORATION**

v.

**STROUSE, INC., and A. Frank Strouse.**

**Civ. A. No. 28835.**

United States District Court
E. D. Pennsylvania.

Oct. 16, 1962.

See also 31 F.R.D. 211.

Woodcock, Phelan & Washburn, By Virgil Woodcock, Mancill, Cooney, Semans & Hedges, By Edwin W. Semans, Philadelphia, Pa., for plaintiff.

Howson & Howson, By Charles H. Howson, Jr., Philadelphia, Pa., for defendant.

WOOD, District Judge.

Plaintiff, Spray Products Corporation, has filed the instant motion under Rule 37, 28 U.S.C.A. to compel the defendant, A. Frank Strouse, to produce certain documents specified in a certain item of the subpoena duces tecum issued February 27, 1961, and to answer certain questions put to him at the oral deposition on March 10, 1961. Defendants oppose plaintiff's motion on the ground that the information sought by plaintiff constitutes either privileged communications between client and attorney or relates to

the matter of damages and profits which should be deferred until it is initially determined that liability exists.

Prior to our setting forth the relevant portions of the oral deposition in question and making rulings on the issues raised, it will be necessary to briefly recite the pertinent facts:

In this suit, plaintiff has charged defendants with infringement of plaintiff's U. S. Patent No. 2,948,595 for "Engine Starting Fluid Propellant," and defendants, by counterclaim, have charged plaintiff with infringement of defendants' U. S. Patent No. 2,928,435 for "Spray Product Package and Method of Packaging Spray Products."

The subject matter of the patents relates to pressurized or aerosol packages in the form of light-weight cans containing a priming or starting fuel for diesel engines and a gaseous propellant under pressure whereby the starting fluid is discharged from the can in a spray by operating the valve in the top of the can.

In 1955, plaintiff, by its President Charles P. Orr, engaged A. Harry Crowell, Esq., a patent lawyer and member of the District of Columbia Bar, to prepare and file certain patent applications covering alleged inventions made by Orr. The first application, Serial No. 529,955, was filed August 22, 1955 for Spray Starting Fluid. This application was later abandoned. The second application, Serial No. 551,729, was filed December 8, 1955 for Engine Starting Fluid Propellant, and this second application was also later abandoned.

In the summer of 1956, at the urging and recommendation of Orr, the defendant Strouse also employed A. Harry Crowell, Esq., as his patent lawyer to prepare and file certain patent applications covering alleged inventions made by Strouse. The first application, Serial No. 603,876, was filed in the Patent Office on August 14, 1956 and later abandoned in favor of a second application,

Serial No. 701,706, which was filed December 10, 1957 as a continuation-in-part of the first application. This latter application issued on March 15, 1960 as the Strouse patent in suit No. 2,928,-435.

On August 31, 1956, plaintiff entered into an agreement in writing with the defendant, Strouse, Inc. Under this agreement plaintiff reserved to itself all rights in Orr's patent pending for the formulation of starting fluid and defendant, Strouse, Inc., reserved to itself, all rights in Strouse's patent pending for the processing of said formula and its packaging. In addition, under said agreement, Spray granted to Strouse the sole and exclusive right to fill, load and package in pressurized cans its product known as starting fluid for a period of three years from the date of the agreement, and thereafter from year to year unless written notice of cancellation of the agreement be given by either party ninety days before the end of the then current term.

This agreement was negotiated by plaintiff and the defendant, Strouse, and their respective attorneys, Edwin W. Semans, Esq., and Thomas E. Waters, Esq. Crowell did not participate in its preparation or negotiation.

Pursuant to the agreement, the defendant, Strouse, Inc., loaded for plaintiff all of plaintiff's spray packages for starting fuel until termination of the agreement on August 31, 1959.

In November, 1957, Orr terminated his employ of Crowell as his patent lawyer because of a divergence of views with respect to a certain trademark opposition proceeding then pending in the U. S. Patent Office. At this time all of Orr's work in Crowell's hands, including the patent applications, was taken over by another attorney, John P. Brady, Esq. After the attorney-client relationship between Orr and Crowell was terminated in November, 1957, Crowell continued to represent Strouse and is cur-

rently representing the defendants as counsel in this litigation.

Another application of Orr was prepared by his new attorney, Brady, and filed in the Patent Office on July 17, 1959 under Serial No. 825,462 as a continuation-in-part application of Serial No. 551,729 prepared by Crowell and later abandoned. This application, Serial No. 825,462, issued into plaintiff's patent in suit No. 2,948,595.

Since August 31, 1959, the date that the defendant, Strouse, Inc., terminated its agreement with plaintiff, plaintiff has had its spray packages of starting fuel made and loaded for it by Pace, Inc., Wilmington, Delaware, and defendant, Strouse, Inc., has engaged in packaging pressurized packages of starting fuel for its own account.

1. The subpoena issued February 27, 1961 includes item 4 which reads as follows:

"4. Furnish all records and copies, including the data and analytical reports, correspondence by which you identified the materials used for filling cans, the can structures and procedures disclosed to Mr. Crowell for purposes of drafting the following patent applications:

"Application of Arthur F. Strouse, assigned to Strouse, Inc., Serial No. 603,876, on Packaging Products for Dispensing by Gas Pressure, filed August 14, 1956, now abandoned,

"Application of Arthur F. Strouse, assigned to Strouse, Inc., Serial No. 701,706, on Spray Product Package and Method of Packing Spray Products, filed December 10, 1957, which has eventuated in Patent No. 2,928,-435."

Strouse in his oral deposition, after reading the aforesaid item 4, was asked the following questions:

"BY MR. GARVEY:

"Q Now, have you furnished all the records and copies including the data and analytical reports, corre-spondence, by which you identified the materials used for filling cans, the can structure and procedures disclosed to Mr. Crowell for purposes of drafting the two applications that are referred to here, one of which is already in the record as Plaintiff's Exhibit D and the other as Plaintiff's Exhibit E, which are your two applications filed through Mr. Crowell, one of which now has eventuated in patent.

"MR. CROWELL: Mr. Garvey, I am going to say this right now,—

"MR. GARVEY: Is this an objection?

"MR. CROWELL: This is an objection by Mr. Crowell. Whether or not the witness has brought that material, I am not going to allow him to introduce any of it or furnish you any of that, because I don't think you are entitled to any of that information. That is purely attorney and client material which does not concern your side of the case at all.

"MR. GARVEY: Then, you have instructed the witness—

"MR. CROWELL: I am instructing the witness not to furnish anything.

"MR. GARVEY: Let me finish. —not to produce the records and materials called for in No. 4 of the statement attached to the subpoena. Is that correct, Mr. Crowell?

"MR. CROWELL: That is correct."

Federal Civil Rule 26(b) permits the examination of a party or witness regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action. The issue of whether or not a certain matter is privileged is governed by the law of the state in which the United States court is held. In Pennsylvania, the privilege accorded confidential com-

munications between an attorney and his client exists by virtue of a statute.[1] The sole question to be resolved by this Court then is: Under the facts of this case, are the requested documents and material and the information sought in connection therewith privileged as confidential communications between the attorney, Crowell, and his client, Strouse?

An examination of the facts recited above shows that the plaintiff and Strouse had a common interest and engaged the same attorney, Crowell. Under such circumstances, while it is obvious that a communication between Crowell and plaintiff or between Crowell and Strouse would be privileged as against third person, it is equally obvious that it would not be privileged as between themselves on the ground that they did not intend confidentiality or secrecy.

■ The privilege from disclosure assumes the intention of confidentiality. When the parties do not intend or are not desirous of confidentiality, the privilege does not exist.

■ The foregoing views coincide with those expressed in Wigmore on Evidence, 3rd ed., Vol. VIII, p. 603, as follows:

"§ 2312. Communications to opponent or his attorney or in opponent's presence; Joint attorney. There may be a relative, not an absolute, confidence.

"The chief instance occurs when the same attorney acts for two parties having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other * * *"[2]

Accordingly, our answer to the question presented is in the negative. The defendant, Strouse, will, therefore, produce the documents and material referred to in item 4 of the subpoena and furnish the information sought in connection therewith. Such direction will relate only to the period when the parties were both represented by Crowell.

Our conclusion that Strouse will have to produce the documents and material requested and furnish the information sought in connection therewith on the ground that same are not privileged is not affected by the fact that it was at plaintiff's urging that Strouse engaged Crowell as his attorney; for, the conclusion obtains regardless of the manner in which the parties engaged Crowell as their common attorney.

Finally, the result of our conclusion is to equalize the respective positions of plaintiff and the defendants. Crowell, by virtue of his prior representation of the plaintiff, has knowledge of certain facts; now, by virtue of our conclusion herein plaintiff's present attorney will have knowledge of certain disclosures by Strouse to Crowell during

---

1. Act of 1887, P.L. 158, § 5, cl. (d), 28 P.S. § 321, provides:

"Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client."

Plaintiff has urged waiver of the privilege in accordance with the terms of said statute. In view of our conclusions contained in parts 1 and 2 of the opinion herein it is unnecessary to determine the construction to be given to the language

" * * * unless in either case this privilege be waived upon the trial by the client."

2. Also, in Wigmore on Evidence, 3rd ed., Vol. VIII, p. 605, the following illustration, which is somewhat analogous to the case at bar, appears: "First, then, a communication by A to X as the common attorney of A and B, who afterwards become party opponents, is not privileged as between A and B since there was no secrecy between them at the time of communication."

the period Crowell acted as the common attorney for plaintiff and Strouse.

■ 2. Also, at the oral deposition, Strouse was interrogated about his consultation with an attorney, Thomas E. Waters, Esq., in respect to his, Strouse's, right, after the termination of his agreement with plaintiff, to package starting fluids or starting fuels for internal combustion engines or diesel engines using nitrous oxide and carbon dioxide as propellants. He was asked:

"Q All right. Did you consult an attorney on that to determine whether or not you had the right to do it?

"A Yes."

He was then asked if Mr. Waters had told him he had a right to go ahead and manufacture, at which point the witness was instructed:

"MR. CROWELL: Anyhow, I will enter an objection to it, and I instruct the witness not to answer that, because that is of confidential relationship between him and his attorney."

The information sought, namely, the legal advice and opinions given Strouse by his attorney, is so clearly within the scope of the privilege of confidential communications between an attorney and his client that no discussion relative thereto is required. In addition, there is nothing in the record that would indicate an expressed or implied waiver of said privilege.

Accordingly, we hold that Strouse was justified in refusing to answer the questions set forth.

■ 3. Finally, at the oral depositions, Strouse was directed not to answer certain questions hereinafter set forth:

"Q What percentage of your business was attributable to plaintiff while the contract was in existence from August, 1956, to August, 1959?

"A The greater portion of it.

"Q The greater portion of it was attributable to plaintiff?

"A Correct.

"Q And since that time, is the greater portion of your business on the loading or packaging of starting fluids for internal-combustion engines or diesel engines using nitrous oxide as a propellant or carbon dioxide as a propellant?

"A May I not ask if that is confidential information and has nothing to do with this case?

"MR. CROWELL: I will enter the objection anyway on the ground that you are raising matters which go to the question of damages which you cannot, at this time, go into.

"BY MR. GARVEY:

"Q Now, then, the next question is this: were your profits for this business higher than the profits which you made on products that you packaged or loaded for other customers?

"MR. CROWELL: Same objection. I instruct him not to answer."

In Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, it was held that the allowance or disallowance of discovery on the question of damages is a matter of the Court's discretion. Additionally, it held:

"There are times when a suit is triable in separate parts, one affecting the right or liability, and the other affecting the measure of recovery. In suits of that order a discovery as to damages will commonly be postponed till the right or liability has been established or declared. * * *"

In Moore's Federal Practice, 2d ed., Vol. 4, p. 1072, it is stated:

"The Sinclair case is still good law under the Rules. While the measure or amount of damages is

clearly a 'matter * * * which is relevant to the subject matter involved in the' action, the court in its discretion may order discovery as to damages to be deferred until after a determination as to the plaintiff's right to recover. Thus in a patent infringement suit, where the plaintiff seeks an injunction and an accounting, the court will not ordinarily permit the plaintiff to obtain discovery on the question of damages, until after the question whether the plaintiff has a right to an accounting has been determined."

It has been indicated that in suits charging patent infringement the general practice in this district is to first try the liability phase and then, if necessary, to try the damage phase.[3]

Thus, we hold, in accordance with the cited authorities and as a necessary and logical corollary of the aforesaid general practice, that in this patent suit discovery as to damages should be deferred pending a determination of the liability issue.

A contrary conclusion is not justified merely because this patent infringement suit also charges unfair competition; for, in such circumstance, the damages flowing from patent infringement and unfair competition overlap to some extent.

It follows, therefore, that Strouse was justified in refusing to answer the questions which are set forth and which clearly relate to damages.

### ORDER

AND NOW, in accordance with the foregoing opinion it is this 16th day of October, 1962, ORDERED:

(a) that the defendant, Strouse, produce the documents and material referred to in item 4 of the subpoena and fur-

nish the information sought in connection therewith, such order relates only to the period when the parties were both represented by Crowell, see part one of this opinion;

(b) that plaintiff's motion to compel answers to the questions set forth in part two of this opinion is DENIED; and

(c) that plaintiff's motion to compel answers to the questions set forth in part three of this opinion is DENIED.

---

3. This general practice is undoubtedly a good one in view of the fact that United States Courts of Appeals have jurisdiction of appeals from judgments in civil

actions for patent infringement which are final except for accounting. 28 U.S.C. § 1292(a) (4).