Guido **GIORDANI** et al.

v.

Sal B. **HOFFMANN** et al.

**Civ. A. No. 41768.**

United States District Court
E. D. Pennsylvania.

Jan. 29, 1968.

See also D.C., 277 F.Supp. 722.

Edward B. Bergman, Solo, Abrams, Bergman, Trommer & Padova, Philadelphia, Pa., Gene Crescenzi, New York City, for plaintiffs.

Jan E. DuBois, White & Williams, Philadelphia, Pa., for all individual defendants.

Harold E. Kohn, Bruce W. Kauffman, Dilworth, Paxson, Kalish, Kohn & Levy, and M. H. Goldstein, Michael Brodie, Goldstein & Barkan, Philadelphia, Pa., for General Executive Bd. of Upholsterers International Union of North America, Bd. of Trustees of U. I. U. Health & Welfare Fund, Board of Governors of U. I. U. National Pension Trust.

Frank Bielitsky, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for U. S. Fidelity & Guaranty Co.

Paul J. Donnelly, Philadelphia, Pa., for The American Ins. Co.

## OPINION AND ORDER

JOHN MORGAN DAVIS, District Judge.

This is a class action brought by some members of the Upholsterers International Union of North America (UIU) against the officers of the Union and the trustees of both the Health and Welfare Fund, and the Pension Fund. The action is based on an allegation of breach of fiduciary duty by the defendants in the management of the aforementioned funds.[1] Plaintiff's counsel admits in his brief that many of the facts which were developed for the named plaintiffs resulted from a detailed investigation which was conducted by counsel for the plaintiffs and not by the plaintiffs themselves. The facts derived from the investigation then formed the basis for the complaint; the information which the plaintiffs verified by executing an affidavit to the effect that the allegations are "true and correct to the best of my knowledge, information and belief" was obtained by plaintiff's counsel.

Although it is admitted that plaintiff's counsel would be required to answer questions propounded by the defendant regarding the investigation which was

[1]. The action was commenced under section 501(b) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501, and sections 301 and 302 of the Labor Management Relations Act, 29 U.S.C. § 185 and § 186.

conducted prior to commencement of the lawsuit, absent some other privilege, it is contended that the attorney-client privilege protects the plaintiff himself from responding, since the plaintiff would have acquired the information in a direct attorney-client interview, "for the specific and confidential purpose of making decisions as to this litigation." [2] Plaintiff's counsel contends that the attorney-client privilege is applicable not only to direct questions, such as "What did Mr. Bergman [plaintiff's counsel] tell you?", but also to indirect questions the answers to which are based solely upon the factual information which was related to the plaintiffs, by their counsel. Accordingly, the plaintiff was advised not to respond to certain questions which were directed by the defendant's counsel during depositions. Counsel for both sides have orally agreed that this Order may be directed to the categories, or generic types of information sought via deposition, in lieu of submitting specific questions to this court for individual rulings. The four representative categories of information which were presented in defendant's brief and the oral argument will be adopted for the purposes of analysis.[3]

## I.

The plaintiff refused to respond to questions which related to facts in support of the allegations contained in the complaint which, according to plaintiff's counsel, were obtained by him (counsel) from persons other than the plaintiffs, and subsequently explained to the plaintiffs.

Essentially, the defendant's position is that the attorney-client privilege is inapplicable because:

1.  The privilege extends only to communications, not facts.

2.  The privilege applies only to disclosures made by a client to his attorney, and not to information which the attorney obtained from other sources. With regard to the former, the defendant has cited City of Philadelphia v. Westinghouse Elec. Corp., 205 F.Supp. 830, 831 (E.D.Pa., 1962) in support of the proposition that the attorney-client privilege extends to *communications*, and not to *facts*. In *Westinghouse*, one of the antitrust electrical cases, the defendant corporation was not permitted to invoke the attorney-client privilege to prevent discovery of information regarding meetings wherein prices, terms of sale, and territories were discussed by corporate officials, merely because the information sought was collected by the attorney in preparation for litigation. But this information was compiled by the attorney (representing both individual and corporate defendants) and never *communicated*, i. e. related or reported to the "corporation" in an attorney-client relationship. Since there was no communication, the compilation of knowledge or "facts" in the possession of the attorney was not protected by way of the attorney-client privilege.[4]

2.  Brief of plaintiffs in opposition to Motion to Compel Plaintiff Giordani to answer Questions Propounded Upon Oral Examination, P. 3.

3.  The fourth category pertains to the mode in which the plaintiff Giordani prepared for deposition. Although this did not appear in the defendant's brief, it it was raised during oral argument. Both counsel directed themselves to whether it was an appropriate subject for discovery.

4.  Counsel for the numerous defendants experienced some difficulty in understanding precisely when a corporation may invoke the attorney-client privilege, since a corporation traditionally acquires knowledge through its officers and agents, and the corporation is charged with knowledge of all material facts which they acquire in the course of their employment. Judge Kirkpatrick subsequently addressed himself to this problem, in 210 F.Supp. 483 (E.D.Pa.1962), and held that if a corporate employee, regardless of his rank or title, is in a position to control or substantially contribute to the decisions in which the corporation is seeking the advice of the attorney, he personifies the corporation, and the attorney-client privilege applies.

■ In the instant case, there is no issue regarding whether the information was *communicated* i. e. transmitted from one person to another. Not only is *Westinghouse* factually distinguishable, but it has been erroneously construed by counsel for the proposition that communications and facts are mutually exclusive terms. Theoretically, "communication" which would be exempt from disclosure by the attorney-client privilege, can certainly include "facts" which are not within the knowledge of the client until related by the attorney. Consequently, we find that distinction to be without merit.

The defendant also argues that the attorney-client privilege applies only to disclosures made by a client to his attorney, and not the converse.

■ In Pennsylvania the attorney-client privilege is governed by statute, which states:

Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client.[5]

The question of whether the attorney-client privilege is applicable is governed by state law, Spray Products Corp. v. Strouse, Inc., 31 F.R.D. 244 (E.D.Pa. 1962).

The attorney-client privilege is designed to secure subjective freedom of mind for the client in seeking legal advice. The client is thereby encouraged to communicate with his attorney about matters which he may not otherwise feel free to discuss. 8 Wigmore, Evidence (McNaughton rev., 1961) p. 545. Since discussion necessarily requires a mutual exchange of thought, there is no basis, theoretically at least, why factual communications from the attorney to the client may not be encompassed within the privilege. Indeed, a principal function of an attorney may require the revelation of information properly characterized as "facts", in contrast to "advice", i. e. professional analysis regarding the feasibility of a contemplated course of action.

■ However, to prevent abuse of the attorney-client privilege, it has long been held that privileged communications between an attorney and his client are confined to confidential communications and knowledge derived wholly or in part from private and professional intercourse, and do not embrace those facts with which counsel may become acquainted collaterally, Kramer v. Kister, 187 Pa. 227, 40 A. 1008, 44 L.R.A. 432 (1898). In In re: Ruos, 159 F. 252, 256 (E.D.Pa.1908), the purpose of the attorney-client privilege was succinctly stated as:

The ground upon which the rule has been rested for more than a century is the vital importance to the client that he should feel perfectly safe in disclosing the secrets of his case to his legal adviser. Protected by the privilege, he may be confident that (with few exceptions) whatever he may communicate cannot thereafter be used against him.

The court then continued:

Clearly, this reason does not apply in a situation where the attorney becomes acquainted with facts from another source than his client.

■ Although the above-cited cases pertain to the question of whether the *attorney* may invoke the privilege in order to protect the client, it is also applicable to the instant case, where the *client* seeks to protect himself from having to disclose information obtained from the attorney. To hold otherwise would reduce the privilege to a sham, since disclosure of information obtained from third persons could be enveloped with the protection of the privilege merely by the ruse of having the attorney relate them to the client. This approach was expressly rejected in Magida on Behalf of Vulcan Detinning Co. v. Continental Can Co., 12 F.R.D. 74 (S.D.N.Y.1951)

5. The Act of 1887, P.L. 158, section 5, cl. (d), 28 P.S.Pa. § 321.

where it was observed that "the attorney could elicit the information from third persons, subject to discovery, then communicate it to his client as 'advice' and thereby render it privileged.[6]" This was also applied in City of Philadelphia v. Westinghouse Elec. Corp., 210 F.Supp. 483 (E.D.Pa.1962) where statements made by non-party witnesses to an attorney in preparation for litigation on behalf of the client were considered outside the attorney-client privilege. Finally, in Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947) it was observed that:

> * * * the protective cloak of the privilege does not extend to information which an attorney receives from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications, and other writings prepared by counsel for his own use in prosecuting his client's case * * *.

Accordingly, we hold that the attorney-client privilege is inapplicable to prevent discovery of facts obtained by the attorney from sources other than the client's in support of the allegations contained in the complaint.[7]

## II.

The defendant has posed questions regarding the manner in which the plaintiff first communicated with and then retained his attorney. In this regard,

counsel have devoted themselves solely to the question of whether the attorney-client privilege attaches from the very first consultation, or as the defendant contends, not until the attorney-client relationship is created, thereby excluding communication made prior to the engagement of counsel. We find it unnecessary to pursue this line since the information which the defendant seeks is not relevant to the matter presented for trial, i. e. whether the defendants engaged in misconduct while managing and administering the pension and welfare funds.

Rule 26(b) provides that the "deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *". The Rule continues: " * * * It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." The defendant believes that he is entitled to inquire into the motives and circumstances under which the plaintiff agreed to institute suit, recognizing that plaintiffs' counsel has admitted that much of the information upon which the complaint was based was not known to the plaintiff.[8]

Recognizing that there is a split of authority regarding the relevancy of matters pertaining to the motives or circumstances surrounding the institu-

---

6. Although *Magida* invoked the application of the attorney-client privilege under New York law, the statute therein envoked is similar to the Pennsylvania statute. Section 353 of the N.Y. Practice Act states that "An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment * * *."

7. We cannot accept plaintiff's assertion that Spray Products Corp. v. Strouse, Inc., 31 F.R.D. 244 (E.D.Pa.1962) decided that information given by an attorney to a client in a direct attorney-

client interview for the specific and confidential purpose of making decisions as to the litigation, is fully covered by the privilege. *Spray Products* decided that the attorney-client privilege was not applicable where information was given by two parties to a common attorney. Between themselves the parties would not have manifested the requisite intent to treat the information as confidential.

8. See the sworn statement of plaintiff's counsel, (document 19), where it was admitted that " * * * much of the information on which the allegations of the complaint were based were supplied to him [Giordani] by his counsel * * *"

tion of a lawsuit,[9] we feel constrained to preclude the defendant from inquiring into this area following the conclusion contained in Higgins v. Shenango Pottery, 12 F.R.D. 510 (W.D.Pa.1952). This precise point was considered in Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.D.R. 128 (N.D.Ill. 1953) where it was observed that:

> * * * it is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim. The responses might lead to embarrassing admissions of champerty or unconscionable arrangements as to fees and expenses, but these excesses are not in any way relevant to the trial of the particular issue.

Similarly, in Magida on Behalf of Vulcan Detinning Co. v. Continental Can Co., 12 F.R.D. 74 (S.D.N.Y.1951) it was determined that questions designed to bring out an irregular, if not distinctly illegal motive in bringing a stockholders derivative suit were not permitted, on the basis of irrelevancy. Although the defendant has not expressly stated that his motivation in pursuing the line of questioning regarding the institution of the suit by the plaintiff is identical to that discussed in *Magida* and *Foremost,* supra, he has created that impression both during oral argument and in his brief.[10] In any event, it is the accepted rule in Pennsylvania that the burden is upon the party who is seeking to withdraw the seal of secrecy to demonstrate that the attorney-client privilege is inapplicable. Alexander v. Queen, 253 Pa. 195, 97 A. 1063 (1916). We believe that the defendant has not met that burden.

Following the aforementioned authorities, the plaintiff need not respond to questions regarding the manner in which the plaintiff Giordani first communicated with and retained his counsel.

## III.

■ The attorney-client privilege was invoked by the plaintiff rather than respond to defendant's questions regarding what prior actions were taken to exhaust his intra-union remedies before instituting this lawsuit. The requirement for first exhausting intraorganizational remedies was recently ruled upon in this action by Judge Van Dusen,[11] citing Horner v. Ferron, 362 F.2d 224, 231 (9th Cir. 1966) which held that the plaintiff, as a member of a labor union against which suit has been brought under Section 501 (b) of the Labor-Management Reporting and Disclosure Act of 1,959 need only request that the organization or its board of governors or officers, sue or recover damages or secure an accounting or other appropriate relief from the asserted violations of fiduciary duties defined in section 501(b) of the Act. Since this is a condition precedent to the prosecution of a lawsuit, the actions which plaintiff has taken pursuant thereto are an appropriate subject for discovery.

## IV.

■ Finally, the defendant seeks to discover the mode in which the plaintiff Giordani prepared for discovery. Although we recognize that the scope of discovery under the Federal Rules is designed to permit the parties to obtain the fullest possible knowledge of the issues and facts before trial, Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947); there must still be a demonstration of some relevancy to the merits of the case. F.R.Civ.P. 26(b).

---

9. For a collection of decisions pro and con, see 4 Moore's Federal Practice, § 26.16 [2].

10. Reference is made to the fact that the plaintiff has executed an affidavit appearing in the last page of the complaint that all of the allegations are true and correct to the best of his knowledge and belief. Since counsel for the plaintiff has admitted that the institution of the

suit was principally the result of a detailed investigation conducted by plaintiffs' counsel, and not the plaintiffs themselves, the inference is fairly deduced.

11. See document No. 25, Memorandum and Order Sur Motion to Vacate Order Granting Application for Leave to Sue, by Van Dusen, J. dated November 3, 1967, section III.

**892**

We fail to see how information regarding the actions which transpired in preparing for a deposition have any relationship to the merits, nor has defendants' counsel demonstrated how this may be relevant. Accordingly, we cannot grant defendants' Rule 37 motion to compel the plaintiff to answer questions regarding this item.

It is so ordered.