**AMHERST LEASING CORPORA-TION et al.**

v.

**EMHART CORPORATION et al.**

**Civ. No. 14234, MDL Docket No. 45.**

United States District Court,
D. Connecticut.

Nov. 11, 1974.

David Berger, Philadelphia, Pa., for plaintiffs.

Richard G. Schneider, Edwin P. Rome, Richard P. McElroy, Henry T. Reath, Miles W. Kirkpatrick, Peter C. Ward, Philadelphia, Pa., for defendants, John W. Barnett, New Haven, Conn., of counsel.

### RULING ON MOTION FOR PROTECTIVE ORDER

BLUMENFELD, District Judge.

This complex antitrust case, one of several involving similar claims and consolidated for trial in this district, is brought by a group of building owners on behalf of all others similarly

situated.[1] All of the named plaintiffs in this case are partnerships or corporations under the umbrella of The Lefrak Organization, *i. e.*, they are all under the control and at least partial ownership of Samuel J. Lefrak.

During their discovery the defendants, manufacturers of master-key lock sys- tems, deposed Anthony Scavo, vice presi- dent of The Lefrak Organization in charge of purchasing and the man claimed by the plaintiffs to be "the per- son within the plaintiffs' organization with direct responsibility for and with direct knowledge of the purchase of builder's hardware, including master key systems, for each of the named plaintiffs."[2] Mr. Scavo's testimony at his deposition revealed gaps in his knowledge concerning certain allegations in the complaint and a complete lack of knowledge about the authority by which this suit was brought and the existence of a class.[3] In order to obtain further information the defendants noticed the deposition of Samuel Lefrak.

The plaintiffs by the instant motion have moved for a protective order against the taking of Lefrak's deposition on two grounds: 1) that Lefrak has no knowledge (except that which may be imputed to him by reason of his posi- tion) of the transactions which have given rise to this action, and 2) that questions relating to the claim that this suit is a class action are improper sub- jects for discovery. The plaintiffs do not deny that Lefrak may have knowl- edge of at least some of the facts relat- ing to these latter issues, nor do they al- lege that Lefrak is not the person in

The Lefrak Organization best suited to answer such questions.

## I. Lack of Knowledge

■ The defendants argue, and the plaintiffs at the hearing seemed to ad- mit, that the general rule is that a claimed lack of knowledge does not pro- vide sufficient grounds for a protective order; the other side is allowed to test this claim by deposing the witness.[4] *See* Parkhurst v. Kling, 266 F.Supp. 780, 781 (E.D.Pa.1967); 4 J. Moore, Federal Practice ¶ 26.69, at 26–496 to 26–497 (Rel. No. 11—1970).

However, the plaintiffs maintain that a special rule exists in the context of cor- porate parties. As Professor Moore says, there is a danger that the examin- ing party will choose to depose a corpo- ration pursuant to Fed.R.Civ.P. 30 through its busiest officer when the desired information could easily be ob- tained from a subordinate. To prevent possible harassment, courts have some- times required the examining party to settle for corporate officers other than those noticed. *See id.* at 26–501 to 26– 502 n.22. On the other hand, courts have also sometimes followed the general rule and rejected claims of ignorance by high corporate officials as grounds for issuing protective orders against their depositions. *See* Less v. Taber Instru- ment Corp., 53 F.R.D. 645 (W.D.N.Y. 1971); Transcontinental Motors, Inc. v. NSU Motorenwerke Aktiengesellschaft, 45 F.R.D. 37 (S.D.N.Y.1968); Overseas Exchange Corp. v. Inwood Motors, Inc., 20 F.R.D. 228 (S.D.N.Y.1956).

---

1. See note 6 *infra*.

2. Plaintiffs' Motion for Protective Order Va- cating Defendants' Notice of Deposition of Samuel J. Lefrak ¶ 1.

3. Defendants' Memorandum in Opposition to Plaintiffs' Motion for a Protective Order 5– 6 & app. A (excerpts from the transcript of Scavo's deposition of Nov. 16, 1973).

4. In the cases to this effect the claim has normally been made by way of an affidavit of the one whose deposition is sought. *See,*

*e. g.*, Parkhurst v. Kling, 266 F.Supp. 780 (E.D.Pa.1967). In this case Lefrak's igno- rance is claimed by his attorney's affidavit. At the hearing on this motion the attorney, Laddie Montague, offered to provide an affi- davit by Lefrak to the same effect. The Court did not request that he do so, and Mr. Lefrak did not file such an affidavit sponta- neously. Because of the decision I have ar- rived at, it is not necessary to determine whether the identity of the affiant is materi- al to the validity of the claim of ignorance.

Upon examination, it appears that the cases in which the exception for which the plaintiffs contend has been employed are distinguishable from the present action. In Armstrong Cork Co. v. Niagara Mohawk Power Corp., 16 F.R.D. 389, 390–391 (S.D.N.Y.1954):

"Defendant apparently served a 'shotgun' notice naming nine officers and six directors of the plaintiff as persons whose depositions it desired to take. It is pointed out by the plaintiff that one of the persons so named is dead, and another has been retired for some time, and none of those noticed has any knowledge of the facts relating to the matters in controversy in the suit. Defendant does not appear to dispute this assertion. The affidavit submitted on behalf of defendant states that the question as to whether these individuals are without knowledge of the facts in controversy 'may best be determined by the examination of Hawker, Mitchell, and Simeral' and then continues that: 'The others will not be examined unless it reasonably appears that they do, in fact, have knowledge.'

"In the absence of any reasonable belief that the persons have some knowledge of the facts concerning which their testimony is to be taken, there is no reason why they should be compelled to appear en masse for the taking of their depositions in New York. . . .

" . . . .

"The motion of plaintiff to vacate defendant's notice of taking of depositions of all persons named therein, except Hawker, Mitchell, and Simeral is granted, without prejudice to the right of defendant to notice depositions of any of the others after the depositions of the above three have been concluded."

In M. A. Porazzi Co. v. S. S. Mormaclark, 16 F.R.D. 383 (S.D.N.Y.1951), the court vacated the notice to depose a party's vice president when it appeared that he could contribute nothing that could not be learned from examination of the company's general claims agent, whose deposition had been consented to. However, the court's order to vacate was without prejudice to renewal of the notice should examination of the vice president be shown necessary following deposition of the general claims agent.

In both *Armstrong Cork* and *M. A. Porazzi* the courts were willing to protect the busy corporate officers on the condition that the opposing party could have full discovery through the deposition of others. In this case, however, such an easy accommodation of the competing interests of the parties is not possible. Scavo, Lefrak's subordinate and the person whom the plaintiffs claim is most knowledgeable about the facts underlying their claims, has been shown to lack information in a number of areas. In other words, this Court is faced with a situation in which even the *Armstrong Cork* and *M. A. Porazzi* courts would allow deposition, for full discovery seems not to be possible through the deposition of others less busy than Lefrak. It may be, of course, that Lefrak will also lack the information the defendants desire. However, at this point, when the plaintiffs' chosen spokesman has failed to satisfy the defendants' needs, Lefrak should have to establish his ignorance at his deposition rather than through affidavit. The wide scope of discovery afforded by the federal rules, *see* Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(1), demands no less.

## II. Discovery of Class Action Issues

Having concluded that there are some items as to which Lefrak may be deposed, it is expeditious to determine whether or not the scope of discovery should extend to issues related to the existence of a proper class action in this case. *Cf.* Fed.R.Civ.P. 26(c). Although the Court is normally reluctant to con-

sider in advance what areas a deposition may inquire into, *see* 4 J. Moore, Federal Practice ¶ 26.72 (Rel. No. 11—1970), the plaintiffs' motion for a protective order has already brought the scope of Lefrak's deposition squarely into issue, *see id.* Thus, I will consider whether the defendants may examine Lefrak about class action issues.

The plaintiffs' objection to this line of inquiry is based on their characterization of it as going to the plaintiffs' motives and their attorney's authority for bringing this suit as a class action. The defendants, while not explicitly eschewing such inquiry, stress that this Court must at some point decide whether to certify the plaintiffs' class.[5] Towards this eventuality, they seek discovery on such issues as the plaintiffs' financial ability and willingness to serve as representatives of such a large class,[6] the typicality of the named plaintiffs' claims, the size of the class, the commonality of questions among the class, etc.[7] *Cf.* Fed.R.Civ.P. 23(a, b).

In light of the Supreme Court's decision in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which came down following the briefing and oral argument of this motion, the Court believes that the plaintiffs' general objections to this line of inquiry may be disposed of summarily. In *Eisen* the Court overturned a procedure of the district court which allowed "a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it." 417 U.S. at 177, 94 S.Ct. at 2152. In so doing and in reviewing the district court's certification of the class after extensive discovery of the propriety of the class action, the Court *sub silentio* approved the district court's allowance of discovery on such issues and stressed the importance of resolving them. *Cf.* National Auto Brokers Corp. v. General Motors Corp., 376 F.Supp. 620, 637–638 (S.D.N.Y.1974).

This Court is willing to allow the deposition of Lefrak to embrace all subjects relevant to the issue of whether this is a proper class action. The sole remaining question, therefore, is whether all the discovery sought by the defendants is relevant to this issue (or some other issue in the case). *See* Fed.R.Civ.P. 26(b). In particular, the question is whether inquiries going to The Lefrak Organization's motives or its attorney's authority for bringing this suit, but not going to the issues enumerated by *Eisen* or Fed.R.Civ.P. 23(a, b),[8] are proper.

5. Before this case was transferred to this district the late Judge Wood made a preliminary finding that it could proceed as a class action and that the plaintiffs were entitled to discovery on their claims. However, Judge Wood took care to point out that his was only a preliminary ruling and that the plaintiffs' allegation of a class action would be subject to challenge following discovery. City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970).

6. The class alleged consists of:
"'owners and builder-owners of apartments, hotels, motels and office buildings throughout the United States who have purchased locks of Master Key Systems manufactured by one or more of the defendants.' It is alleged that during 1960–69 there were approximately 184,818 residential units for five or more families constructed throughout the United States and approximately 87,499 office buildings and that in 1968, there were approximately 21,400 hotels and 44,000 motels throughout the United States."
*Id.* at 234. In Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court decided that the named plaintiffs must give individual notice of a class action to those members of the class identifiable through reasonable effort. *See* Fed.R.Civ.P. 23(c)(2). The expense of such notice is to be borne by the named plaintiffs; in the present case the expense is likely to be quite large.

7. *See* Defendants' Memorandum, *supra* note 3, at 6.

8. "Rule 23. Class actions.—(a) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

This question seems to have engendered no firm majority position among other courts which have had to consider it, although it has been raised a number of times. *See* 4. J. Moore, Federal Practice ¶ 26.52[2] (Rel. No. 11—1970). However, some of these prior rulings do not seem on point in the present context,[9] and when these are disregarded there is only one case cited by Moore or the parties holding in favor of allowing discovery of such matters. In Schwartz v. Broadcast Music, Inc., 16 F.R.D. 31 (S.D.N.Y.1954), discovery of possible sponsorship of the suit by a group not named as a party was permitted even though the judge thought that anything discovered would be inadmissi-

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

9. For example, in Magida v. Continental Can Co., 12 F.R.D. 74 (S.D.N.Y.1951), the court held irrelevant an inquiry into the motive of a plaintiff bringing a derivative suit to recover short-swing profits for the corporation under § 16(b) of the Securities Exchange Act of 1934. The theory of derivative suits —that the "true" plaintiff is not the person prosecuting the suit but the corporation— weakens any analogy of this holding to the present case, where the inquiry is directed to the motive of the named and "true" plaintiffs.

In Arlington Glass Co. v. Pittsburgh Plate Glass Co., 24 F.R.D. 50 (N.D.Ill.1959), the plaintiffs wished to discover possible sponsorship of an antitrust suit by a trade association on the grounds that the association was the real party in interest. Judge Robson held that as a matter of law the association could not be the real party in interest and denied discovery predicated "on that basis." 24 F.R.D. at 51. The examining party in the suit did not raise, nor did the court consider, whether discovery of possible sponsorship would be available on some other basis.

In Stella v. Kaiser, 87 F.Supp. 525 (S.D. N.Y.1949), Judge Rifkind relied on a prior holding in the same securities case that the good faith of the plaintiff was a material issue in the case. *See* Stella v. Kaiser, 83 F. Supp. 431 (S.D.N.Y.1949) (Kaufman, J.). With this ruling as the law of the case, "[i]t follows that the plaintiff cannot properly complain of a thorough search into his good faith in bringing this suit." 87 F.Supp. at 526. The good faith of the plaintiffs has not been asserted as an issue in this case, and this Court has been directed to no authority for the proposition that the good faith of a plaintiff is relevant in an antitrust treble damage action.

Judge Rifkind went on to say, in language quoted in 4 J. Moore, Federal Practice ¶ 26.56[2], at 26–159 (Rel.No. 11–1970), that in the circumstances of the case questions about the plaintiff's good faith were not frivolous. This Court is unable to agree with Professor Moore that Judge Rifkind's language stands as a general endorsement of allowing discovery of the parties' motives.

ble at trial. *But cf.* Arlington Glass Co. v. Pittsburgh Plate Glass Co., 24 F.R.D. 50 (N.D.Ill.1959). Judge Dimock did not explain his reasoning in allowing the discovery other than to indicate that "[i]t is enough if the information sought is relevant for the purposes of pre-trial examination." 16 F.R.D. at 32.[10]

Against this single strand of authority stands the analysis in Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.R.D. 128, 129–130 (N.D.Ill.1953):

> "At a deposition taken pursuant to Rule 26 of the Rules of Civil Procedure, 28 U.S.C.A., Mr. Roberson, representing the defendants, Pabst Brewing Company and Pabst Sales Company, propounded questions to sundry of the plaintiffs concerning the discussions between the plaintiffs which led to the filing of the complaint, the manner in which the particular plaintiff's participation in the action was solicited, the arrangement for fees, and other information concerning the discussions relative to the institution of the action. Plaintiffs' counsel directed witnesses not to answer on the ground of irrelevancy . . . .
>
> ". . .
>
> "The narrow question then is whether the testimony sought to be elicited 'appears reasonably calculated to lead to the discovery of admissible evidence.' Of course, the question concerning anything under the sun might lead to a chain reaction in the witness' mind which might develop relevant testimony or lead to a substantial clue to relevant testimony. Such a possibility might lead to endless and intolerable interrogation. It is the duty of the court to keep the inquiry within reasonable bounds and to restrict questions to those having substantial relevancy to a sensible investigation. It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim. The responses might lead to embarrassing admissions of champerty or unconscionable arrangements as to fees and expenses, but these excesses are not in any way relevant to the trial of the particular issue."

*See* Giordani v. Hoffman, 278 F.Supp. 886, 890–891 (E.D.Pa.1968) (following and citing *Foremost Promotions*); Higgins v. Shenango Pottery Co., 12 F.R.D. 510 (W.D.Pa.1952) (motive of corporation in defending derivative suit irrelevant and therefore not discoverable).[11]

This Court finds the reasoning of *Foremost Promotions* persuasive. In the absence of any argument by the defendants showing possible relevance of the plaintiffs' motives or the authority of their attorney for bringing this suit, the Court orders the deposition of Lefrak to proceed but limits its scope to exclude such matter. Fed.R.Civ.P. 26(c)(4).

So ordered.

---

10. Spartanics, Ltd. v. Dynetics Engineering Corp., 54 F.R.D. 524 (N.D.Ill.1972), perhaps provides some additional support for this position. The court there summarily held that discovery on the issue of whether anyone other than the defendant controlled the defense of the suit must await a determination that the *patent sued upon was valid and was* infringed by the defendant.

11. In Bogosian v. Gulf Oil Corp., 337 F. Supp. 1228 (E.D.Pa.1971), Judge Lord denied a motion to compel answers to deposition questions concerning the plaintiff's financial arrangements with his counsel for paying costs of the litigation on grounds of relevancy. However, Judge Lord also noted that "[p]laintiff has already answered extensive questions regarding his motivation in bringing this suit . . . ." 337 F.Supp. at 1229; *cf.* Fed.R.Civ.P. 30(d) (limitation of examination due to harassment). To the extent that *Bogosian* is not affected by *Eisen* (relevance of information relating to payment for notice to class members), it probably stands against allowing inquiry into arrangements with counsel. However, it is impossible to determine whether or not Judge Lord would have compelled answers to the questions about motivation had the plaintiff not responded voluntarily.