**In re WESTINGHOUSE ELECTRIC CORPORATION URANIUM CONTRACTS LITIGATION.**

Misc. No. 6728.

United States District Court,
W. D. Pennsylvania.

July 19, 1977.

See also, Jud.Pan.Mult.Lit., 436 F.Supp. 990.

Frederick N. Egler, Egler & Reinstadtler, Pittsburgh, Pa., for Westinghouse.

Frank W. Morgan, Pittsburgh, Pa., for Gulf Oil Corp.

## OPINION and ORDER

SNYDER, District Judge.

This Court has been asked by Westinghouse Electric Corporation (Westinghouse) to order compliance by Gulf Oil Corporation (Gulf) and Charles A. Boyce, its Secretary, with a notice of deposition and subpoena duces tecum which included "Schedules of Requested Documents" to be produced for examination and copying at Gulf's Headquarters in Pittsburgh, Pennsylvania, within the jurisdiction of this Court. On the day before compliance was due, Gulf formally objected for a multiplicity of reasons, including attorney-client privilege, to either the copying of the documents or to the taking of the deposition. After passage of more than three weeks, Westinghouse "noticed" Gulf that two days later, on May 4, 1977, it would ask this Court to hear arguments and give "EMERGENCY CONSIDERATION" due to the fact that discovery in the principal action to which this is ancillary in the United States District Court for the Eastern District of Virginia would be cut off as of June 3, 1977. In support thereof, Westinghouse filed a Brief and the Affidavit of Ronald Lawrence, its Chief Counsel of Litigation, in which it was set forth that the instant subpoena required documents of primary importance to "In Re: Westinghouse Electric Corporation Uranium Contracts Litigation, MDL Docket No. 235", involving numerous actions for damages and injunctive relief against Westinghouse on its long-term commitment for

the supply of uranium to the Plaintiffs, all of whom are public utilities, and related to the Westinghouse defenses against the contract claims asserted therein. A trial date had been set by Judge Merhige for August 22, 1977. Most importantly here, Westinghouse is raising the defense of "commercially impracticable" under Section 2–615 of the Uniform Commercial Code[1] because of the dramatic upsurge (from $6 to $40 per pound) experienced by uranium prices after 1973, allegedly due in part to conspiratorial actions of foreign and United States uranium producers (including Gulf) to regulate the supply and control the price of uranium.

Furthermore, the Lawrence Affidavit alleged:

"9. Deponent is informed and believes, and on that basis alleges, that on June 16, 1975 the United States grand jury in Washington, D. C. issued identical subpoenas to all uranium producers, including Gulf, directing them to produce documents concerning the unlawful conspiracy. A true and correct copy of one such subpoena to Gulf Oil Corporation is attached hereto as Exhibit 'F'. The categories described by the grand jury in its subpoena were restated verbatim in the subpoenas issued by this court in support of Westinghouse's application to Gulf, the only difference being that Westinghouse omitted certain categories (such as SEC filings) contained in the grand jury subpoena in order to minimize the burden on Gulf of such production.

10. In the multidistrict litigation there is in existence a Confidentiality Order, dated May 6, 1976, applicable to parties and nonparties alike, including Gulf, which provides broad ranging protection for any alleged confidential material produced pursuant to subpoena. Under that order, any producing company, including Gulf, can designate documents as 'confidential' or 'specially confidential' and thereby impose restrictions on their disclosure. A true and correct copy of the Confidentiality Order is attached hereto as Exhibit 'G'."[2]

At a hearing held May 12, 1977, before Judge Louis Rosenberg of this Court (presently unavailable) an Agreed Order was entered calling for production of the documents listed in Schedules A and B, but excusing immediate compliance as to the documents in Schedule C (herein being requested) and requiring Gulf to identify any

---

1. The Uniform Commercial Code provides in Section 2–615:

"Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

(a) Delay in delivery or non-delivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

(b) Where the causes mentioned in paragraph (a) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.

(c) The seller must notify the buyer seasonably that there will be delay or non-delivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer."

In Comment 4 to the above Section, it is stated:

"Increased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance. Neither is a rise or a collapse in the market in itself a justification, for that is exactly the type of business risk which business contracts made at fixed prices are intended to cover. But a severe shortage of raw materials or of supplies due to a contingency such as war, embargo, local crop failure, unforeseen shutdown of major sources of supply or the like, which either causes a marked increase in cost or altogether prevents the seller from securing supplies necessary to his performance, is within the contemplation of this section. (See *Ford & Sons, Ltd. v. Henry Leetham & Sons, Ltd.*, 21 Com. Cas. 55 (1915, K.B.D.).)"

2. This Confidentiality Order is attached hereto as Appendix A.

documents withheld on the grounds of privilege.[3]

On May 20, 1977, Westinghouse filed a Petition to Hold Gulf Oil Corporation in Contempt of Court for Violation of the Agreed Order of Production, stressing that time was of the essence. The Affidavit of its Counsel, James A. Gould of Kirkland & Ellis, was that on May 19, 1977, in Pittsburgh, Pennsylvania, "Mr. Ream [Of Counsel for Gulf] informed me that Gulf would not produce a list of documents withheld on claim of privilege" and that "Attorney Richard Colman, who negotiated the Agreed Order . . . stated that no listing of withheld documents would be produced to me on May 19, 1977." However, a large quantity of documents were produced.

At the Hearing on the Petition, Judge Rosenberg elicited information that the list in question was being prepared and would be available in three or four days. The Hearing Memo indicates:

"GULF will have privileged document list prepared by early next week, and it will be delivered to the Washington office. HEARING ON MOTION will be continued to Tuesday, May 24, 1977 at 11 a.m. unless further notified by Attorney Egler."

The list of documents was submitted to Westinghouse as agreed, but on June 21, 1977, Westinghouse petitioned this Court to compel Gulf to produce the documents identified thereon (some 90 in number) and contended that Gulf's claim of attorney-client privilege was without merit. The matter was then assigned to Judge Herbert P. Sorg of this Court and came on for hearing on June 28, 1977. Judge Sorg was informed that discovery at MDL Docket 235 had been extended to August 21, 1977, with trial set to start September 21, 1977. He then heard detailed arguments, received a Brief from Westinghouse, and considered Gulf's Petition for Stay of Enforcement pending a decision by Chief Judge Bryant of the District of Columbia on a similar motion by Gulf in grand jury proceedings in that District. Judge Sorg denied the Petition as being "too indefinite" a proposal inasmuch as counsel were unable to advise him when Chief Judge Bryant's decision was expected. Counsel for Gulf and Westinghouse requested a briefing schedule and Judge Sorg advised them of a prior inter-circuit assignment which would require his presence elsewhere. He did, however, set up a briefing schedule which has been complied with, and the matter is now ripe for determination on the record and briefs submitted to the undersigned after reassignment.

Gulf opposes the production of these documents for the following reasons (Opposition Brief, pp. 1–2):

"(1) The same documents which Westinghouse seeks to have produced are also subject to claims of privilege before the Federal District Court for the District of Columbia. These same privileged documents have been withheld by Gulf on grounds of privilege from production pursuant to a subpoena issued to Gulf during the course of a grand jury investigation. The matter has been fully briefed and submitted to the District of Columbia Court and is now awaiting decision. Westinghouse has filed an amicus brief in the District of Columbia proceedings, arguing against Gulf's privilege claims as it does here. It would, therefore, be wasteful of this Court's time and resources for it to engage in duplicative proceedings with respect to the identical privilege claims of Gulf.

(2) In a stipulated Order entered by this Court, dated May 12, 1977, Westinghouse agreed to a procedure whereby Gulf would produce to Westinghouse only those documents which have been or shall be produced to the grand jury in the course of the aforementioned investigation. Westinghouse is now seeking to compel Gulf to produce documents which have not been produced to the grand jury, thus attempting to obtain discovery from Gulf beyond that contemplated by the agreed Order.

---

**3.** This Agreed Order is attached hereto as Appendix B.

(3) Westinghouse has brought a private antitrust action in Federal District Court for the Northern District of Illinois, naming Gulf, among others, as defendant. Because of a pending motion by Gulf to disqualify Westinghouse counsel in that case, all discovery with respect to Gulf has been stayed pending resolution of that motion. Westinghouse is attempting to circumvent that stay order by seeking discovery of Gulf in this case.

(4) Gulf's claims of privilege with respect to the documents at issue herein are valid."

## I. THE PETITION FOR STAY.

We are most sensitive to Gulf's request that we stay consideration of a compliance order here since the documents sought are subject to the same claim of privilege before Chief Judge Bryant in the District of Columbia. From all we have been furnished by Gulf, the documents requested here are, in fact, the same documents which Gulf refused to produce on a claim of privilege in the grand jury proceedings in the District of Columbia[4] where Chief Judge Bryant has ordered them to be submitted for an *in camera* review.

Gulf then argues the oft quoted statement of Mr. Justice Cardozo in *Landis v. North American Company,* 229 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158 (1956):

"[t]he power to stay proceedings is incidental to the power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

The argument proceeds that since Chief Judge Bryant has the issue of privilege as to these same documents before him, no

further action should be taken at this time; citing *Brotherhood of Locomotive Firemen and Enginemen v. Reading Company,* 279 F.Supp. 948 (E.D.Pa.1968); *Camero v. McNamara,* 222 F.Supp. 742 (E.D.Pa.1963). Particularly, they contend that they are entitled to such a stay when there is duplicitous litigation in another federal forum. *Rosenfeld v. Schwitzer Corporation,* 251 F.Supp. 758 (S.D.N.Y.1966).

Westinghouse, to the contrary, contends that there is involved an unlawful anti-competitive conspiracy which resulted in the dramatic uranium price upsurge to which its discovery efforts on a nationwide basis are clearly relevant.[5] It points specifically to documents produced, as for example, in a Utah proceeding which demonstrated "the existence of broad ranging effects of the uranium conspiracy." It says that the importance of the documents to the civil litigation far outweighs any consideration as to economy of time and effort as far as this Court is concerned.

We are deeply concerned that the problems confronting Chief Judge Bryant in the grand jury proceedings may not be conclusive of the problems required to be determined by this Court because different law may apply in the two settings and because of the difference between the civil and criminal nature of the proceedings.

We are proceeding here under Rule 45(d)(1) of the Federal Rules of Civil Procedure which provides:

"Proof of service of a notice to take a deposition as provided in Rules 30(b) and 31(a) constitutes a sufficient authorization for the issuance by the clerk of the district court for the district in which the deposition is to be taken of subpoenas for the persons named or described therein. The subpoena may command the person

---

4. On May 23, 1977, Gulf submitted papers to Chief Judge Bryant in support of its privilege claims. Attached to Gulf's papers is Appendix A which lists the documents for which Gulf is asserting privilege claims. Appendix A consists of two lists: Group 1 and Group 2. These were forwarded to Westinghouse on May 23, 1977 and served to identify those documents withheld by Gulf on grounds of privilege, pursuant to the terms of the Agreed Order entered

May 12, 1977. The documents shown on Group 1 are already in the possession of Westinghouse and are not at issue here, but are subject to the protective order of April 4, 1977 entered by the United States District Court for the District of Virginia.

5. Gulf has never disputed the relevancy of the documents requested.

to whom it is directed to produce and permit inspection and copying of designated books, papers, documents, or tangible things which constitute or contain matters within the scope of the examination permitted by Rule 26(b), but in that event the subpoena will be subject to the Provisions of Rule 26(c) and subdivision (b) of this rule.

The person to whom the subpoena is directed may, within 10 days after the service thereof or on or before the time specified in the subpoena for compliance if such time is less than 10 days after service, serve upon the attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued. The party serving the subpoena may, if objection has been made, move upon notice to the deponent for an order at any time before or during the taking of the deposition."

We believe Pennsylvania law as to privilege is applicable. Rule 501 of the Federal Rules of Evidence provides:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

 It is thus clear that federal courts sitting in diversity jurisdiction must apply the state law of privilege. Prior to Rule 501, the weight of authority seemed to be that the privilege involves "substantive" rights conferred by state law and, under the mandate of *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the state law of privilege must be applied. *Republic Gear Co. v. Borg-Warner Corporation,* 381 F.2d 551 (2nd Cir. 1967); *Krizak v. W. C. Brooks & Sons, Inc.,* 320 F.2d 37 (4th Cir. 1963); *Palmer v. Fisher,* 228 F.2d 603 (7th Cir. 1955), *cert. den. sub nom. Fisher v. Pierce,* 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956); *Spray Products Corporation v. Strouse, Inc.,* 31 F.R.D. 244 (E.D.Pa.1962). Rule 501, noted above, codifies this case law and draws a clear distinction between criminal matters arising within the jurisdiction of the federal courts in which the law of privilege is supplied by federal interpretations of the common law, and civil matters determined by state law in which the law of privilege is governed by state law.

 Gulf contends that Rule 501 not only mandates the application of state, rather than federal, law but also requires that the state from whose substantive law will come the rule of decision to be applied in the main action pending in the Eastern District of Virginia, should also supply the rule of privilege to be applied in this proceeding as well. The Rule expresses no opinion as to which State's substantive law will apply in the controversy. We find nothing in the Report of the Committee on the Judiciary (reprinted in Rule 501 of the Federal Rules of Evidence, 28 U.S.C.A. at pp. 173–176) nor in the Senate Committee Report which in any way would derogate from the principles of *Republic Gear Co. v. Borg-Warner Corporation, supra,* or specify which State law to apply.

The background of the instant proceeding is that trial is to be held in the Eastern District of Virginia, while the deposition is to be taken in the Western District of Pennsylvania. The novelty of the situation lies in the fact that there were some 28 actions pending in that District Court which were transferred to the jurisdiction of the Judicial Panel on Multidistrict Litigation,

and in which cases the State of Virginia had no particular interest. Since the 1970 Amendments, Rules 26(c) and 37(a) of the Federal Rules of Civil Procedure require that proceedings arising in connection with the taking of a deposition be commenced in the District Court of the State in which the deposition is to be taken. It is then settled that the substantive law of the forum includes the Pennsylvania Conflict of Law Rules. *Klaxon Company v. Stentor Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Pennsylvania has adopted the "significant relationship" test. *Gillan v. Gillan,* 236 Pa.Super. 147, 345 A.2d 742 (1975); *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970); *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). Applying this test, the Third Circuit Court of Appeals in *Suchomajcz v. Hummel Chemical Company,* 524 F.2d 19, 23 (3rd Cir. 1975), said:

> "We should apply the law of the predominately concerned jurisdiction, measuring the depth and breadth of that concern by the relevant contact each affected jurisdiction had with the specific transaction. The contacts are relevant only if they relate to the 'policies and interests underlying the particular issue before the court.'" [Citations omitted.]

In the instant proceeding, the deposition is required to be taken here, the Movant and the Deponent are Pennsylvania corporations, and the bulk of the communications sought to be protected are apparently within this State. Thus, Pennsylvania substantive law of privilege will apply to this proceeding.

■ It is appropriate to apply the law of this forum in a discovery setting. Generally, it is not of primary consideration that the evidentiary law of another State may, or may not, make the evidence admissible at trial. The jurisdiction which supplies the applicable rule of privilege must be the one where the party is asserting the privilege.

■ However much we might be tempted to delay consideration of important and difficult problems by granting a stay in the case presently before us, we do not believe that action by this Court should be delayed, considering the civil nature of these proceedings and the criminal nature of the matters pending before Chief Judge Bryant in the District of Columbia, including the secrecy of the grand jury proceedings. In justice to all parties here involved we feel that the Petition for Stay of Compliance must be denied as we must apply Pennsylvania law to the matters before us. *See Baker United States Steel Corporation,* 492 F.2d 1074 (2nd Cir. 1974).

## II. THE AGREED ORDER.

■ Counsel for Gulf urges upon us that Westinghouse is now seeking to compel Gulf to produce documents which have not been produced to the grand jury and is thus attempting to obtain from Gulf discovery beyond that contemplated by the Agreed Order.

The Court does not believe there is any substance whatsoever to this contention. It is quite clear from a reading of the Agreed Order that it did not intend, at the time of its issuance, to bring about a determination of Westinghouse's right to procure discovery of the documents identified as being withheld on a claim of privilege. The Order did provide that Gulf would immediately produce some documents, and would provide Westinghouse with copies of documents produced to the grand jury, as well as identifying by description those documents withheld on the basis of privilege. There is no limitation whatsoever on the right of Westinghouse to pursue its claim for production. Nor is there any injustice in such an Order. In the first place, no extensive search is required since the documents have previously been isolated. Their production will make these documents available to other litigants so that delay on the basis of later discovery is not justified, particularly in light of the early discovery cut-off date. The prejudice to Westinghouse in not having this discovery far outweighs any prejudice to Gulf in furnishing the documents to more than one round of litigants.

## III. THE CHICAGO INJUNCTION.

There is presently pending a motion by Gulf to disqualify Westinghouse's counsel, Kirkland & Ellis, in a suit brought by Westinghouse in the Northern District of Illinois against Gulf, among others. As previously noted, Kirkland & Ellis are counsel in this proceeding as well. Gulf makes the flat statement that because of the seriousness of that pending motion, discovery of Gulf beyond the scope of the contemplation of the Agreed Order of May 12th should not be permitted, particularly in light of the issuance by the Chicago Court "staying all discovery involving Gulf until the disqualification motion has been resolved." That motion arises out of the involvement of Kirkland & Ellis, through its Washington office (under the name of Kirkland, Ellis & Rowes) in an extensive Report for the American Petroleum Institute (A.P.I.) and its members, including Gulf, entitled "Horizontal Oil Company Divestiture and Separation Proposals". It is argued that since Gulf is a substantial member of the A.P.I., and since the Report was prepared to state the case for Gulf and other A.P.I. members who oppose the so-called "horizontal divestiture", they should not, on the same day, be able to sue Gulf charging that the company contributed to the elimination of competition in the uranium industry.

Judge Lawrence T. Lydick had a similar contention before him when Westinghouse sought discovery in Los Angeles by way of deposing three employees of Getty Oil Company in order to obtain evidence related to an affirmative defense raised by it in the contract litigation (MDL No. 235). He noted that Getty Oil was not a party to the contract litigation but was a defendant in another case filed in the Northern District of Illinois in 1976 entitled *Westinghouse Electric Corporation v. Rio Algom Limited,* 76 C. 3830, wherein Westinghouse, on theories related to their affirmative defense in the Virginia action, sought recovery from Getty and others for alleged price fixing. Getty then sought an order under Federal Rule of Civil Procedure 26(c) staying depositions until a ruling by the District Court in Illinois on Getty's motion to disqualify Kirkland & Ellis in that litigation. We believe Judge Lydick stated very succinctly the position we adopt in the instant matter, when he said in *In Re: Westinghouse Electric Corporation Uranium Contract Litigation,* Case No. CV 77–1129 LTL (C.D.Cal. 4/15/77) (at pp. 2–3):

"The motion for a protective order staying depositions is denied. Getty's showing of the annoyance, embarrassment, oppression or undue burden or expense necessary to a Rule 26(3) motion is negligible and its argument that the interests of justice require the granting of its motion is unpersuasive. The showing of potential prejudice to Westinghouse in refusing to allow it to proceed with its discovery in the Virginia action far outweighs any showing by Getty of prejudice to it in allowing counsel for Westinghouse to proceed with its discovery in the Virginia action. In our view, the Illinois District Court can fashion adequate remedies to protect its litigants and to enforce its decisions in the event it decides that Kirkland & Ellis are to be disqualified in the Illinois action. We are offered and find no authority for the proposition that the filing of a motion to disqualify Westinghouse attorneys in the Illinois litigation should prevent or delay discovery by those attorneys on behalf of Westinghouse in other litigation of national scope with judicially established discovery cutoff dates."

The disposition of the discovery motion in Chicago will not project the same result in other courts against counsel.

We are also of the opinion that the Illinois Court may well enforce its decision in the event it decides that Kirkland & Ellis are to be disqualified. Therefore, the delay of the Westinghouse deposition will not be ordered.

## IV. THE ATTORNEY–CLIENT PRIVILEGE.

We must then come to grips with the contention that Gulf has a valid

claim of attorney-client privilege with respect to the documents in issue. The substantive law of privilege in Pennsylvania is set forth in 28 P.S. § 321, which provides:

"Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client."

The statute is essentially a codification of the common law privilege, *Cohen v. Jenkintown Cab Co.,* 238 Pa.Super. 456, 462 n.2, 357 A.2d 689 (1976), and, while the statute refers only to communications from the client to the attorney and the privilege is intended to protect the client and not the attorney, the protection of the privilege must encompass all confidential professional communications from the attorney to the client, to the extent that such communication is based on confidential facts disclosed to the attorney by the client. *Moore v. Bray,* 10 Pa. 519 (1849); *Trzesniowski v. Erie Insurance Exchange,* 59 Pa.Dist. & Co. R.2d 44 (1973); *Eisenman v. Hornberger,* 44 Pa.Dist. & Co. R.2d 128 (1968). Such protection is necessary to reasonably assure the client of confidentiality and thereby foster open attorney-client dialogue.

▇▇▇▇ In this regard, we note again as we did in a rather full discussion of the attorney-client privilege in *United States v. Grand Jury Investigation,* 401 F.Supp. 361 (W.D.Pa.1975), the authoritative statement of Judge Wyzanski about the common law privilege in *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358–59 (D.Mass.1950), a civil antitrust suit in which the Government offered in evidence thousands of strictly intra-corporate documents, as follows:

"The rule which allows a client to prevent the disclosure of information which he gave to his attorney for the purpose of securing legal assistance is founded upon the belief that it is necessary 'in the interest and administration of justice'. *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488. As stated in the Comment to Rule 210 of A.L.I. Model Code of Evidence: 'In a society as complicated in structure as ours and governed by laws as complex and detailed as those imposed upon us, expert legal advice is essential. To the furnishing of such advice the fullest freedom and honesty of communication of pertinent facts is a prerequisite. To induce *clients* to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of the evidence in specific cases.' [Emphasis added.] But the privilege should be strictly construed in accordance with its object. *People's Bank v. Brown,* 3 Cir., 112 F. 652.

Since this memorandum examines in turn the asserted application of this privilege to different classes of documents, it is unnecessary to try to state at the outset and with precision every qualification necessary to found a justified claim of privilege. It will be enough now to note in general, and later to apply in detail, the main qualifications which are necessary. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

Judge Wyzanski then concluded that the client, mistakenly or not, believed it was acting according to law and that generally the purpose of the client's consultation with counsel had not been to seek assistance in committing a tort or crime with impunity.

Therefore, he determined that the attorney-client privilege protected all communications to or from legal counsel, whether outside or in-house counsel, so long as they were not acting principally as business advisors giving only incidental legal advice;[6] the face of the document involved suggested that the principal purpose was to solicit or give an opinion on law, or legal services, or assistance in a legal proceeding; and that the portion of that document sought to be protected contained either information from the client not disclosed to the public or to any third person, or an opinion based upon such information which was not intended for disclosure to third persons. 89 F.Supp. at 359–61. We believe Judge Wyzanski's approach is equally applicable to the Pennsylvania law of privilege, and we therefore adopt it.

 There is another basic tenet of the attorney-client privilege and that is, the relationship cannot be used to further criminal or fraudulent schemes or activities. Neither party has briefed or apparently recognized the importance of this concept in the instant proceeding.

The rule is generally stated that the attorney-client privilege is not to be used as "illegal or fraudulent" behavior, for it is well established that the principle does not apply to legal representations secured in furtherance of intended or present, continuing illegality. *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir. 1971); *See Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933); 8 J. Wigmore Evidence, § 2298. The exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose. *United States v. Friedman, supra; Clark v. United States, supra.*

To invoke disclosure successfully, the party seeking it (here Westinghouse) must make out a prima facie case that the attorney was used in order to promote an intended, continuing criminal or fraudulent activity. The record here would seem to establish such a prima facie case for there is strong evidence that the dramatic upsurge in the price of uranium in the American market was the result of coordinated action on the part of the uranium producers.

There are nine categories of documents at issue here identified by Gulf as follows in their Opposition Brief (pp. 10–13):

"1. Documents prepared by Gulf counsel reflecting, explicitly or implicitly, facts communicated in confidence to counsel by Gulf management personnel. (All documents prepared by Gulf counsel are so identified on the list of Gulf's privileged documents.)

2. Documents from Gulf's house counsel to:

(a) Gulf management personnel, setting forth legal analysis, opinions, and advice relating to compliance with the antitrust laws; and (b) other house counsel, with copies to Gulf management personnel, containing legal analysis, conclusions, discussions with, and advice given to management personnel. (Documents 1, 6, 20, 26, 27, 34, 37, 39, 44, 47, 52, 56, 57, 61, 62, 68, 71, 74, 75, 77, 81, 82, 83, 84, 86, 88.)

3. Documents from Gulf's outside counsel to Gulf's house counsel containing legal advice, opinion, and proposed revisions of certain of Gulf's activities. (Documents 5, 13, 42, 50.)

4. Documents from Gulf's house counsel (or persons performing work at the request and under the direction of counsel) to other house counsel containing communications from the client seeking legal advice, legal comments and analysis, and legal discussions with outside counsel regarding suggested actions by Gulf, and/or recommendations regarding the giving of legal advice to Gulf. (Docu-

---

6. There is much to be said for the argument that in-house counsel, part of the ongoing business activity of a corporation, are never consulted in a non-business atmosphere. We do not subscribe to this ritualistic approach but hold to the tests set out by Judge Wyzanski, including the "primary purpose" test of an opinion of law, or legal services or assistance in a legal proceeding.

ments 8, 11, 14, 15, 21, 25, 35, 40, 43, 48, 54, 55, 70, 73, 79, 80.)

5. Documents from house counsel for a Gulf subsidiary to house counsel for Gulf, prepared for the purpose of obtaining legal opinions or advice. In these instances, the subsidiary's counsel is in fact speaking on behalf of the subsidiary-client. Therefore, these documents are communications from client to counsel, as well as communications among counsel. (Documents 12, 19, 29, 36, 38, 41, 87.)

6. Documents from Gulf house counsel and outside counsel to file containing client communications and legal conclusions. (Documents 3, 4, 23, 30, 32, 33, 46, 49, 66.)

7. Documents from the files of Gulf's law department authored by or reflecting the work product of unnamed Gulf counsel, containing legal conclusions and opinions. (Documents 7, 17, 18, 22, 31, 51, 69.)

8. Confidential communications from client to counsel made for the purpose of keeping counsel apprised of facts and developments so that counsel could provide continuing legal advice and counsel to client. (Documents 2, 9, 10, 16, 22, 24, 28, 45, 53, 58–60, 63–65, 67, 76, 78, 85, 89.)

9. Confidential and Secret Canadian Government documents sent by Gulf Minerals Canada Limited ("GMCL") to Gulf attorneys for legal advice; the Canadian Government has formally requested that similar documents located in Canada be returned to it and has prohibited by law and regulation the disclosure of such types of documents. (Documents 24, 28, 58, 60, 72.)"

An examination of the various categories give no clear clue, first of all, as to whether or not any of these individual documents might fall within the cloak of the attorney-client privilege, and, secondly, which, if any, are related to the conspiracy for which a prima facie case has been shown so that the privilege was abused. What is known as the *Baird v. Koerner* exception (279 F.2d 623 (9th Cir. 1960)) provides that the privilege may be invoked where a "client" can show that a strong probability exists that the disclosure of the particular information sought would implicate that "client" in the very criminal activity for which legal advice was sought. *See United States v. Hodge and Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977), in which Circuit Judge Kennedy said:

"But a *quid pro quo* is exacted for the attorney-client confidence: the client must not abuse the confidential relation by using it to further a fraudulent or criminal scheme, and as a condition to continued representation, the lawyer is required to advise the client to cease any unlawful activities that the lawyer perceives are occurring. Law and society consent to the attorney-client privilege on these preconditions. By insisting on their observance, we safe-guard the privilege itself and protect the integrity of the professional relation.

Because neither the client's identity nor the nature of his fee arrangements are generally privileged, the intrusive effect of our ruling in this case is minimal. And to the extent that appellants' clients had an expectation of confidentiality, that expectation was ill-founded; it has been sufficiently shown that the attorneys were retained in furtherance of a continuing conspiracy. There was a failure of one of the essential preconditions of the privilege."

We also think it necessary to examine the documents raised in the seventh category above to determine if those documents could reflect the work product of Gulf's counsel. Under Rule 26(b)(3), codifying *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), matters prepared in anticipation of litigation or for trial by or for another, or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) may be discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his trial and that he is unable without undue hardship to obtain the substantial equivalent of those materials by other means. In ordering discovery

of such materials where the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

█ We note a decided difference between matters prepared in anticipation of litigation and matters allegedly prepared in furtherance of conspiratorial actions. And, of course, in implementing this Order care will be taken to protect against the disclosure of mental impressions, conclusions, opinions or legal theories of an attorney. See the Opinion entered by Judge McCune of this Court involving this very problem in *Copperweld v. Demag-Mannesmann-Boehler, et al.,* C.A. 71–920 (W.D.Pa. 12/3/74).

█ Finally, we note Gulf's assertions that some of the documents are "Secret Documents" of the Canadian Government which that Government wants returned. While we believe that Gulf has no standing to raise objection for the Canadian Government, we will direct Gulf's counsel to notify the proper Canadian Governmental Officials that the documents will be produced to this Court, and that the Court will entertain any claim of confidentiality they may wish to make.

█ In summary, confidential communications by a client to his attorney seeking legal advice are privileged even though included in a communication from attorney to the client, and are to be excised therefrom. Communications which on their face are part of an ongoing conspiracy and/or not for the purpose of seeking legal advice are. not privileged.

IT IS THEREFORE ORDERED that Gulf Oil Corporation produce within ten (10) days of the date of this Opinion and Order all of the documents listed in the nine categories previously outlined which are not privileged, as defined herein, for inspection and copying by Westinghouse Electric Corporation. All documents for which Gulf still maintains a claim of privilege must be produced to this Court for *in camera* examination within the same ten (10) day period. Thereafter, an Order will promptly be entered as to whether each such document must be produced in whole or in part.

### APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re WESTINGHOUSE ELECTRIC CORPORATION URANIUM CONTRACTS LITIGATION } MDL DOCKET NO. 235

### CONFIDENTIALITY ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and the stipulation of the parties, by their respective attorneys, it is ORDERED that:

1. When used in this Order the word "document" means all original written, recorded or graphic matters whatsoever and all non-identical copies thereof, including, but not limited to, pleadings, motions, responses to discovery, papers, books, records, letters, photographs, tangible things, correspondence, communications, telegrams, cables, telex messages, memoranda, notes, notations, workpapers, transcripts, minutes, reports and recordings of telephone or other conversations, or of interviews, or of conferences, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, advertisements, instructions, charts, manuals, brochures, publications, schedules, price lists, client lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-out

data processing program library, data processing in-put and output microfilm, books of account, records and invoices reflecting business operations, all records kept by electronic photographic or mechanical means, any notes or drafts relating to the foregoing, all things similar to any of the foregoing however denominated by the parties and any other documents as defined in Rule 34 of the Federal Rules of Civil Procedure. In all cases where originals or non-identical copies are not available, document also means identical copies of original documents and nonidentical copies thereof. In all cases where documents are in a language other than English, document includes all translations and materials related to particular transactions.

2. This Order supersedes and replaces the Court's Orders of January 17, 21 and 31, 1976, and governs the handling of all confidential documents and testimony and information previously produced, given or filed pursuant to those Orders, as well as the handling of all confidential documents and testimony hereafter produced, given or filed, subject to the further order of the Court.

3. Any party or person producing or filing a document in these proceedings may designate that document, or any portion of it, as "CONFIDENTIAL" by typing or stamping on its face "Confidential Pursuant to Court Order in Westinghouse Uranium Litigation," or words of similar import. To the extent that a document has been previously designated as "CONFIDENTIAL" pursuant to prior Order of the Court, without such words appearing on the document's face, counsel of the party having received such document shall immediately cause such words to be typed or stamped on the face of the document upon specific identification of that document by the party having produced the document.

4. Any party or person giving testimony in these proceedings may designate that portion of his testimony deemed to be "CONFIDENTIAL" by advising the reporter of such fact. The reporter shall separately transcribe these portions of the testimony so designated and shall mark the face of the transcript with the words referred to in paragraph 3 of this Order. The portion of the transcript so marked shall be filed under seal with the Clerk of the Court. Whenever any document designated as "CONFIDENTIAL" is identified as an exhibit in connection with testimony given in these proceedings, it shall be so marked and separately filed under seal with the Clerk. To the extent that testimony has been previously given and designated as "CONFIDENTIAL" pursuant to prior Order of this Court, without such procedures having been followed, the party or person wishing to have the testimony and exhibits so treated shall make appropriate arrangements with the reporter and the Clerk.

5. Any document or testimony designated as "CONFIDENTIAL" which is revealed by or included in any discovery proceeding (whether formal or informal and whether in the form of depositions, transcripts, interrogatory answers or document production) or in any motions, pleadings, affidavits, briefs or other documents submitted to this Court, shall be subject to this Order. The Clerk shall maintain under seal such documents or testimony designated "CONFIDENTIAL" and submitted to the Court, to be made available only to the Court and to counsel for the parties in these proceedings until further Order of this Court.

6. Whenever a party objects to the designation of a document or testimony as "CONFIDENTIAL", it may apply to the Court for a ruling that the document or testimony shall not be so treated after giving ten days' prior written notice of such application to the party or person asserting such "CONFIDENTIAL" treatment. Until this Court enters an order, if any, changing the designation of the document or testimony, it shall be given the "CONFIDENTIAL" treatment initially assigned to it and provided for in this Order.

7. Except with the prior written consent of the party or person asserting such "CONFIDENTIAL" treatment or the prior order of this Court, after notice as provided in paragraph 6 hereof, the document or tran-

script, and any information contained therein may not be disclosed to any person other than:

(a) Counsel for the respective parties to this litigation, including house counsel and co-counsel;

(b) Employees of such counsel and persons assigned to assist such counsel in the preparation of this litigation;

(c) Any officer or employee of a party who has management responsibility to the extent deemed necessary by counsel, for the prosecution, defense or settlement of this litigation; and

(d) Witnesses and consultants, to the extent deemed necessary by counsel, for the prosecution, defense or settlement of this litigation.

No person receiving such "CONFIDENTIAL" document or transcript shall disclose it or its contents to any person other than those described in this paragraph and for the purposes specified, and in no event shall such person make any other use of such document or transcript. Counsel shall be responsible for obtaining the prior written agreement of all persons to whom any "CONFIDENTIAL" document or transcript is disclosed to be bound by the terms of this Order. Such written agreement shall be obtained by securing the signature of any recipient of such document or transcript at the foot of a copy of this Order, after having had such recipient read the Order and having explained the contents hereof to such recipient. Counsel shall be responsible for maintaining a list of all persons to whom any "CONFIDENTIAL" document or transcript is disclosed and, for good cause shown, such list shall be available for inspection by counsel for other parties upon order of this Court.

8. Any party or person producing or filing a document in these proceedings may seek restrictions on the document's accessibility, beyond those which are provided by the "CONFIDENTIAL" classification referred to earlier, by enclosing the document in an envelope or container on the face of which shall be typed or stamped:

"SPECIALLY CONFIDENTIAL

Unless otherwise ordered by the Court, this document shall not be reproduced for, or shown to, persons other than counsel, including house counsel and their secretarial and paralegal assistants engaged in litigation involving Westinghouse uranium matters. Not to be shown experts, company personnel or others."

In the absence of agreement as to the specially confidential nature of the document by the adverse parties, the document, in its envelope or container, shall be filed with the Court within one week after completion of that round of document production to which the document is responsive, or one week after service of a subpoena *duces tecum* for such document, together with a written motion, a copy of which shall be served on all parties, setting forth a brief description of the document or information for which special confidential treatment is sought, the manner in which disclosure should be restricted and the reasons supporting the request. Counsel for other parties shall have access to such document, or a copy of it, and an opportunity to object to the motion. If the Court grants the motion for "SPECIALLY CONFIDENTIAL" treatment, it will specify the restrictions on disclosure. If the motion is denied, the document will be reclassified as "CONFIDENTIAL" within the meaning of this Order.

9. Any party or person giving testimony in these proceedings may seek restrictions on its accessibility, beyond those which are provided by the "CONFIDENTIAL" classification referred to earlier by advising the reporter of the portion of his testimony deemed to be "SPECIALLY CONFIDENTIAL". The reporter shall separately transcribe those portions of the testimony so designated and shall mark the face of the transcript with the words referred to in paragraph 8 of this Order. The portion of the transcript so marked shall be filed un-

der seal with the Clerk of the Court and shall not be opened until further order of this Court. Whenever any document designated as "SPECIALLY CONFIDENTIAL" is identified as an exhibit in connection with testimony given in these proceedings, it shall be so marked, separately filed under seal with the Clerk, and not opened until further order of this Court. Promptly after the filing of the transcript and any exhibit designated as "SPECIALLY CONFIDENTIAL," the party so designating such testimony or exhibit shall make application to the Court for special confidential treatment in accordance with the procedures referred to in paragraph 8 above.

10. To the extent that a document has been previously designated as "SPECIALLY CONFIDENTIAL" pursuant to agreement between counsel or otherwise, without the procedures provided in paragraph 8 having been followed, counsel for the party having received such document shall, in the absence of the agreement of the party producing the document, within twenty days after entry of this Order, cause the document to be placed in an envelope or container with the words referred to in that paragraph typed or stamped on the face of the envelope or container and shall cause the document to be given "SPECIALLY CONFIDENTIAL" treatment until the party so designating the document has a reasonable opportunity to move the Court for such treatment under paragraph 8 above. To

the extent that testimony has previously been given and designated as "SPECIALLY CONFIDENTIAL", or exhibits identified as such, pursuant to agreement between counsel, without the procedures provided for in paragraph 9 having been followed, the party or person wishing to have the testimony or exhibit so treated shall make appropriate arrangements within twenty days after entry of this Order with the reporter and the Clerk of the Court and shall make prompt application to the Court for such treatment. All other parties shall accord such testimony or exhibit "SPECIALLY CONFIDENTIAL" treatment until a ruling by this Court on the application.

11. A party having produced a document or having given testimony previously designated as "CONFIDENTIAL" may within twenty days from entry of this Order move for an order that such document or testimony be designated "SPECIALLY CONFIDENTIAL," under paragraph 8, or such designation may be made by agreement of the adverse parties.

12. The Clerk is directed to send a copy of this Order to counsel for each party to this litigation.

Robert R. Merhige, Jr.
United States District Judge
5/7/76
/s/ ROBERT R. MERHIGE, JR.

AGREED ORDER

IT IS HEREBY ORDERED THAT:

APPENDIX B

EGLER & REINSTADTLER
FREDERICK N. EGLER
2100 Lawyers Building
428 Forbes Avenue
Pittsburgh, Pennsylvania 15219

KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:
Westinghouse Electric Corporation
Uranium Contracts Litigation (In
the United States District Court
for the Eastern District of
Virginia)

MISC. 6728

MDL No. 235

1. Gulf will produce for inspection and copying by Westinghouse on or before May 19, 1977, the documents called for by Schedules A and B of the subpoena and will be excused from compliance with Schedule C thereof. The omission of Schedule C from the subpoena does not in any way excuse full compliance under Schedule A of the subpoena. Pursuant to Judge Merhige's Order of April 4, Westinghouse has received documents called for by Schedule B of the subpoena, and, to the extent Gulf has already made production under Schedule B, Gulf need not produce such documents.

2. Gulf will identify any documents withheld from production on grounds of privilege.

3. To the extent Gulf supplements production of documents to the Grand Jury in Washington, D. C. investigating uranium pricing, Westinghouse will be furnished copies of such documents.

4. Neither this agreement nor the production of documents pursuant to its terms shall constitute a waiver of Gulf's position in any MDL–235 discovery proceedings or with respect to the motion which it has filed in the *Westinghouse v. Rio Algom, et al.* litigation converning [sic] disqualification of counsel. Further, neither this agreement nor the fact of production of documents pursuant to it shall be referred to in any way by Westinghouse or Gulf in connection with the above pending disqualification motion filed by Gulf.

Entered this 12th day of May, 1977.

s/ Louis Rosenberg
UNITED STATES DISTRICT JUDGE