CEDRONE

v.

UNITY SAVINGS ASSOCIATION, et al.

CEDRONE

v.

TALMAN HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, et al.

Civ. A. Nos. 82–811, 82–2838.

United States District Court, E.D. Pennsylvania.

Nov. 14, 1984.

Joseph A. Coffey, Jr., Philadelphia, Pa., for plaintiff.

Harvey Bartle, III, E. Gerald Donnelly, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This multiparty litigation concerns an aborted real estate transaction involving, *inter alia*, plaintiff Frank Cedrone, trading as Sugarloaf Associates, a limited partnership ("Cedrone"), and defendant Unity Savings and Loan Association ("Unity").[1] Plaintiff has alleged breach of agreements to convey land and fund a construction loan.

Defendant was represented at the time of the events giving rise to the action by the Philadelphia law firm of Drinker, Biddle & Reath ("Drinker"), through John W. Fischer, Esq., Robert J. Hoelscher, Esq., Bonnie Levy Shuman, Esq. and Ralph Rodak, Esq. Upon request, all four Drinker lawyers agreed to, and did, appear voluntarily to have their depositions taken. Objections to certain questions were interposed by counsel for Unity invoking the work-product doctrine and/or the attorney-client privilege. Pending before the court is plaintiff's motion to compel answers to questions propounded at depositions pursuant to Federal Rule of Civil Procedure 37(a).[2] The question presented herein, is whether the information sought is protect-ed from discovery by either the work-product-doctrine or the attorney-client privilege.

Plaintiff seeks the production of certain written materials most prominently referred to in the deposition of Ms. Shuman. He seeks discovery of a closing checklist which might have been used by Drinker attorneys in connection with the real estate transaction. Also sought are notes taken by Ms. Shuman which summarized telephone conversations she had with her client regarding the underlying transaction. Finally, plaintiff seeks discovery of a memorandum written by Ms. Shuman either to Mr. Fischer or to the file before her departure on vacation.

With regard to the checklist, defendant maintains, after a search of its files, that no such checklist exists. If no such list exists, then the request to compel its production is moot. For this reason, that part of plaintiff's motion which seeks production of such checklist will be denied as moot.

As to the notes and the memorandum, the defendant claims that these documents are protected from discovery by the work-product doctrine. It relies on the "strong public policy" underlying the doctrine endorsed by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 397–399, 101 S.Ct. 677, 686–687, 66 L.Ed.2d 584 (1981) and *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Defendant's reliance on the public policy underlying the work-product doctrine is misplaced in a case where, as here, the information it seeks to protect does not meet the requisite standard for protection under the doctrine.

### I.

The work-product doctrine, recognized initially in *Hickman v. Taylor, su-*

---

**1.** Defendant Talman Home Federal Savings and Loan Association ("Talman") is the successor to defendant Unity. Unity and Talman will hereinafter be referred to jointly as defendant.

**2.** Rule 37(a) provides with respect to depositions that "the discovering party may move for an order compelling an answer ... in accordance with the request." Fed.R.Civ.P. 37(a)(2).

The rule also allows such a party to seek an order compelling the production of documents for inspection. *Id.* To the extent that plaintiff herein seeks the production of certain documents, *see* Plaintiff's Memorandum at 13–15, his motion will be construed as seeking an order compelling their production in addition.

*pra*, protects from discovery materials prepared or collected by an attorney "in the course of preparation for possible litigation." 329 U.S. at 505, 67 S.Ct. at 390. *See also* Fed.R.Civ.P. 26(b)(3).[3] Of course, protection extends to material prepared or collected before litigation actually commences. However, some possibility of litigation must exist. *In Re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979).

■ The burden of demonstrating that information was prepared in preparation for litigation, and is thereby protected as work product, rests with the party asserting the doctrine. *See Conoco Inc. v. United States Dept. of Justice*, 687 F.2d 724, 730 (3d Cir.1982). This burden is not to be taken lightly. In the words of Judge Edward R. Becker, "[a]dvising a client about matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard. The threat of litigation must be more real and imminent than that." *In Re Grand Jury Investigation (Sturgis)*, 412 F.Supp. 943, 948 (E.D.Pa.1976).

■ Defendants have not even claimed, much less demonstrated that the notes and memorandum prepared by Ms. Shuman were prepared in anticipation of, or in preparation for, litigation. Accordingly, I can not find based on the record before me that the notes or the memorandum sought are protected under the work-product doctrine.

This answers but the initial question of the inquiry into whether the notes and memorandum are protected from discovery. The second, and more important in terms of the instant action, question is whether these documents are shielded from discovery by the attorney-client privilege.

Also ripe for consideration under the privilege are the answers to certain deposition questions sought by plaintiff and claimed privileged by defendant. Plaintiff has grouped these as questions seeking the substance of:

(1) communications made by the client to the attorney-deponent (with these I will include the substance of the notes taken by Ms. Shuman of her telephone conversation with the client;

(2) communications made by the deponent-attorney to his/her client (it is appropriate to include Ms. Shuman's notes in this category also);

(3) communications between the deponent-attorneys (in this category it is similarly appropriate to include the memorandum to the file or Mr. Fischer, another deponent-attorney who would have had direct access to the file, prepared by Ms. Shuman);

(4) facts concerning the general nature of the deponents activities; and,

(5) underlying facts of which the deponent-attorneys became aware.

## II.

■ Federal courts sitting in diversity jurisdiction, as I do here, must apply state law with regard to attorney-client privilege. Fed.R.Evid. 501; *see also In Re Westinghouse Elec. Corp., Etc.*, 76 F.R.D. 47, 53 (W.D.Pa.1977); *Giordani v. Hoffmann*, 278 F.Supp. 886, 889 (E.D.Pa.1968). The privilege is governed in Pennsylvania by 42 Pa.C.S.A. § 5928.[4] This statute (and its substantially identical predecessor, 28 P.S. § 321)[5] is essentially a codification of the Pennsylvania common law of attorney-client privilege. *In Re Westinghouse, su-*

---

**3.** Rule 26(b)(3) which defines when and to what extent work product is immune from civil discovery, uses the words "prepared in anticipation of litigation or for trial." The Supreme Court noted this codification of the doctrine in *Upjohn*, 449 U.S. at 398, 101 S.Ct. at 687.

**4.** "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor

shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S.A. § 5928.

**5.** *See* Official Source Note to 42 Pa.C.S.A. § 5928 which states that Section 5928 is "[s]ubstantially a reinactment of act of May 23, 1887 (P.L. 158) (No. 89), § 5(d) (28 P.S. § 321)."

*pra,* at 56; *Cohen v. Jenkintown Cab Company,* 238 Pa.Super. 456, 462 n. 2, 357 A.2d 689, 692 n. 2 (1976).

■ It is the well settled law of the Commonwealth that the question of whether a communication is privileged, or not, is for the court. *Moore v. Bray,* 10 Pa. 519 (1849). Equally well settled in Pennsylvania is that unlike the related doctrine protecting the work-product of lawyers, the general rule in the attorney-client privilege area is that "all professional communications are sacred. If the particular case forms an exception it must be shown by him who would withdraw the seal of secrecy, and ... should be clearly shown." *Id.* at 524–25. *See also Giordani v. Hoffmann,* 278 F.Supp. 886, 891 (E.D.Pa.1968); *Alexander v. Queen,* 253 Pa. 195, 203, 97 A. 1063, 1065 (1916) *but cf. Goldinger v. Boron Oil Company,* 60 F.R.D. 562, 565 (W.D.Pa.1973) (placing burden of proof on asserter of privilege under federal common law); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 294 F.Supp. 1148, 1150 (E.D.Pa. 1969) (same).

As demonstrated below, plaintiff has for the most part failed to demonstrate that the material he seeks and the answers to the questions he has propounded are not protected from discovery by the privilege.

A. *Communications made by the client to the deponent attorneys.*

As stated previously, I have placed the contents of Ms. Shuman's notes of her telephone conversations with her client in this category. Assuming that these notes are an accurate representation of those conversations, they could only contain two things relevant to this action: what was said to her by the client and what she said to it. It is appropriate to now address the former.[6]

■ In light of the fact that Ms. Shuman specifically and the Drinker firm generally were retained with regard to the underlying complex real estate transaction, and,

since all communications from a client to his/her attorney in a professional context are presumptively protected, *Moore, supra,* those parts of her notes that reflect information received from the client are protected by the attorney-client privilege. Plaintiff points to no exception to the general rule which would permit discovery. Accordingly, that portion of his motion which seeks production of those parts of the notes will be denied.

Plaintiff himself has categorized herein several questions propounded to several deponents, to which defendant has objected, asserting the attorney-client privilege. Plaintiff attempts to overcome the privilege by claiming that the information sought were "communications made by a client to his attorney for the purpose of being relayed or communicated to a third person." Plaintiff's Memorandum at 9. (Citing *Richter v. Goldberg,* 78 Pa.Super. 309 (1922)).

There are two sets of questions regarding two instances of communications from Unity to the Drinker lawyers that plaintiff seeks this court to compel answers of the deponents. The first set of questions inquired what instructions the deponent attorneys were given by their client on how to communicate with other parties to the underlying real estate transaction. Plaintiff's Memorandum at 10. The second set of questions concerned a letter authored by deponent Fischer, signed by deponent Hoelscher and sent to a third party after a discussion with the client. *See Id.* at 9; Defendant's Memorandum at 12.

■ While it is true that "[c]ommunications made to an attorney *for the purpose* of being conveyed by him to others are stripped of the idea of a confidential disclosure, and, therefore, are not privileged", *Richter v. Goldberg,* 78 Pa.Super. 309, 312 (1922) (emphasis added), it is not apparent from the record that the answers to the first set of questions sought here, were

---

6. The impact of the privilege on those parts of the notes which would contain what she said to the client will be discussed *infra.*

intended to be, or were actually communicated, to any third party.

An interchange typical of the situation where plaintiff seeks an answer by the deponents of his questions claiming that such response falls outside the privilege under *Richter*, is cited in his memorandum at page 10, footnote 7. The interchange was as follows:

Q. Did your client give you any instructions?

A. Yes.

Q. And, did you do anything after receiving those instructions?

A. Yes.

Q. Were part of those instructions simply to talk to Mr. Dougherty? [7]

At which point, an objection was interposed by counsel asserting the attorney-client privilege.

 The mere fact that the client gave its attorneys instructions on whether to communicate or not to communicate to third parties with regard to the real estate deal, does not conclusively demonstrate or support an inference that those *instructions* were given "for the purpose of being conveyed" to third parties. If anything such an instruction would support an inference to the contrary. Accordingly, plaintiff's motion with regard to the questions cited at page 10, footnote 7 of his memorandum, will be denied.

Plaintiff has similarly failed to show that the information he seeks with regard to the letter was intended to be communicated by defendants through the deponent attorneys. The letter itself is plainly discoverable and the defendants have not asserted the privilege with regard to it. However, the questions asked of deponents seek additional information not specifically stated in

the letter and thus not clearly intended to be communicated to any third party.

A typical question in this area for which plaintiff seeks a response, also claiming that the answer falls outside the privilege under *Richter* is cited in his memorandum at page 8, footnote 4. It reads:

Q. Now, in that letter of July 22, 1981, which you signed, you've indicated in the second paragraph, 'the purchase money mortgage and the construction loan to Sugarloaf Associates have not closed because Sugarloaf Associates has not complied with all of the terms of the construction loan.' What portions of the construction loan didn't they comply with? [8]

At which point counsel for defendant interposed an objection.

 If deponents' client had intended for the information sought by the above question to be communicated to the third party then it would have been included in the letter. Plaintiff's reliance on *Richter* is misplaced. The information communicated to the attorneys by the client is clearly privileged.

The question, "what portions of the construction loan didn't they comply with," could alternatively be construed to seek information which would not be privileged. On its face, the question asks what portions of the construction loan do the deponent-attorneys feel hadn't been complied with; *not,* what portions did the client tell them hadn't been satisfied. Since under this interpretation such a question could be answered without revealing confidential information obtained from the client, it must be answered.[9] Accordingly, plaintiff's mo-

---

7. Shuman Deposition at 31.

8. Hoelscher Deposition at 72. The question, "what portions of the construction loan didn't they comply with," on its face appears to seek facts having independent existence outside the privileged area. Defendant claims, however, and depositional context strongly supports its position, that plaintiff, in asking that question, actually meant what did your client tell you wasn't complied with. The soundness of de-

fendant's interpretation of the question is clearly demonstrated by plaintiff's own attempted characterization of the information sought by the question as a communication made by a client to an attorney for the purpose of being conveyed to others under *Richter.*

9. To the extent that the question propounded on page 83 of the Fischer Deposition seeks the same information, and nothing more, I reach the same conclusion.

tion will be granted with regard to the questions propounded at page 83 of the Fischer Deposition and page 72 of the Hoelscher Deposition and denied with regard to all other questions cited to in Plaintiff's Memorandum at 8 n. 4.

**B.** *Communications made by the deponent attorneys to their client.*

■ Plaintiff seeks information categorized hereunder [10] on the theory that 42 Pa.C.S.A. § 5928 protects from disclosure "confidential communication made to [an attorney] by his client" not the reverse. A similar argument was made in *In Re Westinghouse Elect. Corp., Etc.,* 76 F.R.D. 47 (W.D.Pa.1977) where Judge Snyder stated:

> [W]hile the statute refers only to communications from the client to the attorney and the privilege is intended to protect the client and not the attorney, the protection of the privilege must encompass all confidential professional communications from the attorney to the client, to the extent that such communication is based on confidential facts disclosed to the attorney by the client. *Moore v. Bray,* 10 Pa. 519 (1849) *Trzesniowski v. Erie Insurance Exchange,* 59 Pa.Dist. & Co.R.2d 44 (1973); *Eisenman v. Hornberger,* 44 Pa.Dist. & Co.R.2d 128 (1968). Such protection is necessary to reasonably assure the client of confidentiality and thereby foster open attorney-client dialogue.[11]

I agree with Judge Snyder's analysis and believe that the Pennsylvania Supreme Court would so construe the statute. Accordingly, plaintiff's motion with regard to questions listed at page 7, footnote 2, of his memorandum will be denied.[12]

**C.** *Communications between deponent attorneys.*

Here too, plaintiff urges a restrictive reading of the Pennsylvania statute to preclude attorney-client privilege protection. Included hereunder are the memorandum addressed to the file or to deponent Fischer by deponent Shuman and the substance of conversations regarding the representation of Unity between the Drinker attorneys. Here too, plaintiff's arguments must fail.

*In Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 47 F.R.D. 334 (S.D.N.Y.1969), Judge Herlands was presented with a challenge to the applicability of the attorney-client privilege to a letter which would fit appropriately into this category. With regard to the letter Judge Herlands stated: "[a]s a communication between co-counsel containing legal advice, this much of that letter constitutes matter protected by the attorney-client privilege." *Id.* at 339 (citation omitted).

■ In the instant case, it is inconceivable that an internal memorandum between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by that client, could be anything but protected by the privilege. It is likewise inconceivable that oral discussion between those same attorneys for the same reasons and utilizing the same information could be otherwise. Accordingly, plaintiff's motion with regard to both the memorandum and the questions cited in his memorandum at page 12, footnote 13 will be denied.

**D.** *Facts concerning the general nature of the deponents' activities.*

Under this category plaintiff has placed two questions he would like answered.[13] The first of these seeks the substance of instructions given to deponent Fischer by his client. This question more properly belongs in the category dealing with communications made by the client to his attorney. The resolution of plaintiff's motion

---

**10.** *See* Plaintiff's Memorandum at 7 n. 2.

**11.** *Id.* at 56 (discussing 28 P.S. § 321; predecessor to present statute).

**12.** With regard to the only relevant remaining contents of Ms. Shuman's notes of the telephone calls, i.e. those containing her advice given to

her client, it will also be denied. Thus, the entirety of the notes are deemed privileged and beyond the reach of plaintiff's discovery request.

**13.** *See* Plaintiff's Memorandum at 11 n. 11.

with regard to it can be no different than that of the other questions requesting that deponents divulge the nature of the instructions given them by their client. Accordingly, the motion will be denied with regard to this question.

 The second question seeks to ascertain whether the client ever "deferred" to the attorney's wishes in making decisions.[14] While it is true that the "privilege, strictly construed, need not foreclose inquiry into the general nature of a lawyer's activities on behalf of a client, the conditions of the lawyer's employment, or any of the other *external* trappings of the relationship", *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 483 (E.D.Pa.1978), (emphasis added), the specific details of the *internal* decision making process engaged in by the client and his attorney absent a demonstration to the contrary, are clearly protected. Accordingly, the motion as it pertains to this question will also be denied.

E. *Underlying facts of which the attorney deponents became aware.*

 Finally, plaintiff contends that several questions, categorized hereunder, are outside the privilege because the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). The Supreme Court in *Upjohn*, however, was simply pointing out that a *client* may be questioned about facts within his personal knowledge, even though that client at some point discussed those facts with an attorney. *See Upjohn, supra* at 396, 101 S.Ct. at 686. This must be distinguished from the instant case where plaintiff questions the *attorneys* about information disclosed by the client or the legal advice given in response. The information sought by the questions listed at page 12, footnote 12 of plaintiff's memorandum constitute classic

14. *See* Fischer Deposition at 101.

15. For example: "Q. When you spoke to [the client] before lunch, when you called him from Duane, Morris, and you came back and reported

examples of information protected by the attorney-client privilege.[15] Plaintiff has failed to demonstrate otherwise. Thus, his motion with regard to the above mentioned questions will also be denied.

to the attorneys that there were some open items, did [the client] say he would call you back?" Deposition of Rodak at 51.